**Carolyn M. SCHIFFELS, Plaintiff,**

v.

**KEMPER FINANCIAL SERVICES, INC., a corporation, Thomas H. Richards, Charles M. Kierscht, Robert J. Engling, and John S. Serpe, Defendants.**

**No. 91 C 1735.**

United States District Court, N.D. Illinois, E.D.

June 28, 1991.

William Thomas Huyck, Chicago, Ill., for plaintiff.

Joan M. Hall, James Kevin McCall, Douglas Alan Graham, Jenner & Block and James R. Streicker, Ann C. Tighe, and Margaret L. Paris, Cotsirilos, Stephenson, Tighe & Streicker, Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

This case was originally filed in the Circuit Court of Cook County, but was removed to this court pursuant to 28 U.S.C. § 1441 because the complaint asserts a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"). The complaint includes three counts: RICO conspiracy pursuant to 18 U.S.C. § 1962(d), retaliatory

discharge, and defamation. The latter two counts are pendent state law claims. Defendants Kemper Financial Services, Inc. ("Kemper") and Thomas H. Richards ("Richards") have filed motions to dismiss all three counts for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).[1] For the reasons that follow, we find that we do not have subject matter jurisdiction over the RICO count; consequently, we dismiss Count III and remand the remaining pendent claims.

## BACKGROUND

The plaintiff, Carolyn M. Schiffels ("Schiffels") was employed by defendant Kemper as an Administrative and Trading Assistant in Kemper's equity options unit from February 1986, until her employment was terminated on February 15, 1990. Schiffels' supervisor was defendant Richards, a first vice president of Kemper in charge of the equity options unit in the Investment Department.[2] Defendant Kierscht was president, defendant Engling was general counsel, and defendant Serpe was director of human resources at Kemper.

The cause of action arises out of Schiffels' allegations that Richards, who managed two public mutual funds (Kemper Option Income Fund and Investment Portfolios, Inc. Option Income Fund) and a portion of the Kemper Financial Services Profit Sharing Plan ("KFS Plan"), was engaged in some shady trading designed to benefit the KFS Plan at the expense of the two option income funds' shareholders. Schiffels maintains that for the better part of 1987, Richards initially placed orders for S & P 500 futures contracts without designating the appropriate Kemper account (Compl., ¶ 12). Rather, he allegedly waited until the close of the trading day to allocate the profit-making deals to KFS Plan, hoping to close out the other positions at little or no profits or losses (Compl., ¶¶ 12, 13). However, during the first ten months of 1987, the income funds allegedly took losses amounting to about $40 million as a result of this scheme (Compl., ¶ 13).

Schiffels maintains that she expressed her concerns to Richards in April 1987, who relieved her of her responsibility for writing computer input tickets relating to his trade allocations (Compl., ¶ 15). In August 1987, Schiffels took her allegations to Richards' superior, Stephen Timbers, and in September 1987, to Kemper's legal department. *Id.*

In Count I, the retaliation claim, Schiffels alleges that the defendants entered into a conspiracy in October 1987 to further Richards' scheme by covering up Richards' fraud, undermining Schiffels' credibility, and discouraging other employees from making such disclosures (Compl., ¶ 7). She claims that the defendants accomplished this by punishing the plaintiff, isolating her, inducing her to change her allegations, and effecting changes in her employment. *Id.* She also maintains that defendants agreed not to report the losses to the boards and shareholders of the income funds (Compl., ¶ 18). She was allegedly mistreated by being placed on involuntary paid leave of absence from October 30, 1987, to March 16, 1988, while Kemper's auditors investigated her charges, being escorted out of her office, and being interrogated by Kemper attorneys and accountants (Compl., ¶ 19). In March 1988, Schiffels was given a new job at Kemper, which allegedly isolated her from any information that might have corroborated her claims (Compl., ¶ 21).

When the FBI began to investigate the Richards scheme in 1989 and a class action suit was filed by shareholders of the two equity option funds, Kierscht again put Schiffels on paid leave of absence, allegedly to punish and discredit her and to keep her from sources of information and from FBI investigators (Compl., ¶ 23). Finally, when Schiffels refused to resign after be-

1. Both defendants attack all three counts for failure to state a claim and argue, alternatively, that we should decline jurisdiction over the state law counts in any case if we find that the RICO count fails to state a claim.

2. Richards resigned from his position in February, 1989.

ing told that she should look for alternative employment, she was terminated on February 15, 1990 (Compl., ¶ 24).

In the defamation count, Schiffels maintains that the defendants' treatment of her, including putting her on involuntary leave, escorting her out of the premises, transferring her to a job without duties and a desk in a corridor, and terminating her despite satisfactory performance "communicated the false and defamatory assertion that plaintiff had committed some serious breach of ethics or violation of the law" (Compl. ¶ 36) and that "[t]his assertion was published to plaintiff's fellow employees at Kemper" (Compl., ¶ 37). She also claims that this conduct was malicious and that the defendants knew that the "assertion" was false (Compl., ¶ 39). As a result, Schiffels claims that she has been unable to obtain employment in financial services in Chicago, has suffered a damaged reputation, and is entitled to punitive and compensatory damages (Compl., ¶ 40).

Finally, in support of her RICO claim, Schiffels claims that KFS Plan is an "enterprise" for purposes of 18 U.S.C. § 1961(4) that is engaged in interstate commerce, that the defendants are "persons" under 18 U.S.C. § 1961(3) and that in furtherance of the scheme to defraud the shareholders, the defendants used the United States postal service in violation of 18 U.S.C. § 1341, and that use of the mails constituted a racketeering act (Compl., ¶¶ 42–44). In ¶ 46 Schiffels further alleges that the scheme was "ongoing, threatened to continue into the future, and constituted a pattern of racketeering activity as defined by Title 18, U.S.Code, § 1961." Schiffels argues that she has been damaged by the overt acts in furtherance of the conspiracy and requests compensatory damages (trebled) and attorneys' fees.

Now defendants Kemper and Richards argue that Count III (RICO) should be dismissed for failure to state a claim because

1. the plaintiff lacks standing;

2. the complaint fails to plead either the alleged mail fraud or the RICO conspiracy with particularity; and

3. the complaint fails to allege that the defendants agreed to conduct the affairs of the alleged enterprise through a pattern of racketeering activity.[3]

## DISCUSSION

The defendants argue that this court does not have subject matter jurisdiction over the RICO count because Schiffels does not have standing as a person "injured in her business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). The defendants maintain that Schiffels has no standing because her discharge was not the consequence of any alleged predicate act (in this case mail fraud), but rather was the consequence of the alleged conspiracy to cover up the illegal trading. In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985), the Court ruled that "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." The *Sedima* Court quoted with approval the Seventh Circuit's statement that "[a] defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct...." *Sedima*, 473 U.S. at 496–97, 105 S.Ct. at 3285, *quoting Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago*, 747 F.2d 384, 398 (7th Cir.1984).

Schiffels relies on *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162 (3rd Cir. 1989), for the proposition that standing may be conferred when the injury is occasioned by the overt acts associated with the *conspiracy* when the basis for the RICO claim is § 1962(d).[4] The *Shearin* court noted that "[n]othing in *Sedima* forecloses the possibility that harm arising from an act predicate to conspiracy, yet distinct from the racketeering acts listed in section

---

**3.** Given our disposition of the RICO count, we do not address the arguments advanced by the defendants regarding the pendent claims.

**4.** 18 U.S.C. § 1962(d) states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

1961(1), might yet confer standing so long as the plaintiff has alleged a violation of section 1962(d)." *Shearin*, 885 F.2d at 1169.

In *Shearin*, the plaintiff was allegedly hired for the purpose of creating the appearance that the defendants were a genuine trust company. She was fired, however, some time later to prevent her from disclosing the defendants' illegal activities to the authorities. In *Shearin*, the purpose of the alleged RICO violation was to collect fees for fiduciary services to the financial benefit of the defendants, but the plaintiff asserted standing on the basis of the acts in furtherance of the conspiracy, not the predicate acts themselves. The court found that the plaintiff's injuries did not confer standing under either §§ 1962(a) or (c), but that they did for purposes of the conspiracy section, § 1962(d): "Shearin's hiring and firing plausibly constitute overt acts that not only would establish a conspiracy, but in this case were allegedly *essential to it.*" *Shearin*, 885 F.2d at 1168 (emphasis added). The court permitted the plaintiff's case to go forward regarding her firing, finding that

> it would be anomalous to allow plaintiffs to recover for harm suffered from investment in, or control or conduct of, a pattern of racketeering, yet preclude recovery for conspiracy to commit these violations simply because the overt act that furthers the conspiracy does not itself qualify as racketeering.

*Shearin*, 885 F.2d at 1170.

While it is true that the *Sedima* Court advised that the RICO statute be given a broad reading regarding "activity which RICO was designed to deter," and be "liberally construed to effectuate its remedial purposes" (*Sedima*, 473 U.S. at 497–500, 105 S.Ct. at 3285–87), some limits must be put on the statute's reach. The Seventh Circuit has not directly addressed this issue in a § 1962(d) context,[5] but at least two other circuits have done so in *Reddy v. Litton Indus., Inc.*, 912 F.2d 291 (9th Cir. 1990) and *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir.1990). Both *Reddy* and *Hecht* rejected the *Shearin* analysis. We find the *Reddy* court's approach to be instructive because of the similarity of the facts involved. In *Reddy*, the plaintiff uncovered a bribery scheme during the course of his employment and reported the same to his superiors. When the plaintiff was fired, he filed suit alleging that he was discharged because he would not take part in the defendants' cover-up of illegal bribes to Saudi Arabian officials. *Reddy*, 912 F.2d at 293.

The *Reddy* court discussed the *Hecht/Shearin* split, coming down in the *Hecht* camp (no standing to sue as a consequence of injury occasioned by overt acts in furtherance of the conspiracy rather than the predicate acts themselves) because the role of the *Reddy* plaintiff, like that of the *Hecht* plaintiff "was peripheral, not central, to the very existence of the conspiracy. The unique facts of the *Shearin* case suggest that its holding may appropriately be construed narrowly." *Id.* at 295. We would agree with this analysis. Here Schiffels, like the *Reddy* plaintiff, had not been hired specifically to effectuate the conspiracy, but was on the outside attempting to serve a whistleblower function.[6]

We feel the better course is to join forces with the *Hecht* and *Reddy* courts, declining to extend the reach of RICO beyond injuries not directly occasioned by the racketeering acts. To do otherwise would be to open the RICO portals to remote or tangential consequences of illegal activities that are themselves often extraordinarily com-

---

**5.** In *Rylewicz v. Beaton Serv., Ltd.,* 888 F.2d 1175 (7th Cir.1989), the Seventh Circuit found that the plaintiffs did not have standing to bring a RICO action because they had not been injured for purposes of § 1962(c). The analysis did not directly address the issue of § 1962(d) standing, although the plaintiffs appeared to argue below that their injuries were the consequence of overt acts in support of the conspiracy. The court styled the plaintiffs' injuries as "derivative" and therefore insufficient to confer standing.

**6.** The circuits have regularly rejected invitations to make a special standing exception for whistleblowers. *Kramer v. Bachan Aerospace Corp.,* 912 F.2d 151, 155 (6th Cir.1990) (collecting cases).

plex and far-reaching. Consequently, we dismiss the RICO count for lack of subject matter jurisdiction. Accordingly, we do not reach the soundness of the pendent claims but remand them to the state court. *Carnegie–Mellon Univ. v. Cahill,* 484 U.S. 343, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988).

## CONCLUSION

For the foregoing reasons, we dismiss Count III for lack of subject matter jurisdiction and remand the state law claims. As there is no just reason for delay in the entry of judgment pursuant to Fed.R.Civ.P. 54(b), the clerk of the district court is directed to enter this judgment.