MANION, Circuit Judge.
 

 Carolyn Schiffels, a former employee of Kemper Financial- Services, sued Kemper and several Kemper officials alleging that the officials conspired to violate the Racketeer Influenced and Corrupt Organizations Act (RICO) by agreeing to conduct the affairs of an enterprise through a pattern of racketeering activity. See 18 U.S.C. § 1962(c)-(d). This appeal requires us to determine whether a plaintiff who alleges she has been injured by a conspiracy to violate RICO, but not by the predicate acts of racketeering underlying the RICO violation, has standing to sue under RICO. The district court dismissed Schiffels’ RICO claim, holding that she did not have standing to sue under RICO because she was not directly injured by any predicate act of racketeering. Because we conclude that the court placed a limitation on RICO standing that RICO itself does not impose, we reverse and remand.
 

 I.
 

 We review the district court’s decision to dismiss Schiffels’ RICO claim de novo, taking all facts alleged in the complaint, as well as any reasonable inferences from those facts, in the light most favorable to Schiffels.
 
 Caldwell v. City of Elwood,
 
 959 F.2d 670, 671 (7th Cir.1992). Schiffels alleged that she was employed by Kemper in its equity options unit which was managed by Thomas Richards, a Kemper vice-president. Among Richards’ responsibilities was the management of two public mutual funds with combined assets of $1 billion. Richards also managed a portion of the Kemper Financial Services Profit Sharing Plan (the “Kemper Plan”), a plan whose participants were Kemper officers and employees, including Richards and the other defendants in this case. Both the mutual funds and the Kemper Plan involved. Richards in speculative trading in Standard & Poor’s 500 Stock Index Futures Contracts on the Chicago Mercantile Exchange.
 

 According to Schiffels, “[fjrom sometime prior to January, 1987, until sometime after October, 1987,” Richards conducted a scheme to defraud the two mutual funds by allocating losing trades in S & P 500 futures contracts to the mutual funds and allocating winning trades to the Kemper Plan. Richards accomplished this feat by
 
 *347
 
 placing trade orders in S & P 500 futures contracts by telephone to his floor traders without designating which account the trade was for. If during the day the market went up, Richards would close out the position and allocate the profit to the Kem-per Plan. If the market went down, Richards would leave the trade open and allocate the loss to the mutual funds. As a result of Richards’ scheme, the mutual funds lost $40 million during the first ten months of 1987.
 

 Schiffels caught wind of Richards’ scheme and expressed her concern to Richards in April 1987. Richards responded by relieving Schiffels of her duty of writing computer input tickets reflecting Richards’ allocation of trades. In August 1987, Schiffels spoke to Richards’ supervisor about Richards’ activities, and in September 1987 she spoke to a member of Kem-per’s legal department. In October 1987, when Richards learned about Schiffels’ attempts to blow the whistle on him, he put Schiffels on probation and suggested she seek work elsewhere. Schiffels responded by writing a letter to defendant Charles Kierscht, Kemper’s president, in which she set forth her allegations about Richards’ activities.
 

 At about this time, according to Schif-fels, the individual defendants — Richards, Kierscht, Robert Engling, and John Serpe — entered into a conspiracy “to further Richards’ scheme by covering up Richards’ fraudulent activities, minimizing the impact of plaintiff’s disclosures by undermining her credibility, and discouraging other employees from making similar disclosures.” Part of the conspiracy involved excluding material information about Richards’ activities and their resulting risks and losses from reports to the mutual funds’ boards and shareholders, from prospectuses, and from other required filings concerning the funds. The defendants did have a fiduciary duty to disclose the information. The conspiracy also allegedly involved a campaign of “harassment” against Schif-fels that eventually led to her firing.
 

 From October 30, 1987 until March 16, 1988, Schiffels was placed on a paid leave of absence. During this time, Kemper’s internal auditors “allegedly” investigated her charges. Schiffels, however, was not allowed to participate in the investigation in any meaningful way, and was eventually informed that the investigation disclosed no basis for her allegations. After the internal investigation, Schiffels returned to work in a newly-created job that initially involved no duties and that was designed mainly to isolate her from Richards’ department, deny her access to information that would corroborate her charges, and punish her for trying to blow the whistle on Richards. All during this time, however, Schif-fels continued to receive her full pay.
 

 During the spring and summer of 1988, Kemper employed Arthur Young & Company to investigate Schiffels’ allegations. Again, Schiffels was not allowed to participate in this investigation in any meaningful way. In early 1989, the FBI began to investigate Richards’ scheme, and shareholders in the two mutual funds filed a class action suit. In response, Kierscht again placed Schiffels on a paid leave of absence to punish and discredit her and to keep her from providing information to the FBI or shareholders. Serpe personally escorted Schiffels to her desk to retrieve her belongings, and from her desk to the elevator.
 

 On December 20, 1989, the class action suit was dismissed on procedural grounds. The defendants decided at that time to fire Schiffels for blowing the whistle on Richards. After taking several unsuccessful actions to force her to resign, Kierscht fired Schiffels on February 15, 1990.
 

 Schiffels responded to her firing by filing this suit in federal' court. The district court dismissed Schiffels’ RICO claim, holding that she did not have standing to sue under RICO because she was not injured by any predicate act of racketeering. See
 
 Schiffels v. Kemper Fin. Servs., Inc.,
 
 767 F.Supp. 909 (N.D.Ill.1991). On appeal, we must decide if that decision is correct. We must also decide whether Schiffels has properly pleaded a RICO conspiracy claim in any event and if not, whether we should
 
 *348
 
 remand to allow Schiffels an opportunity to amend her complaint.
 

 II.
 

 RICO’s standing provision, 18 U.S.C. § 1964(c), provides that “[a]ny person injured in his business or property by reason of a violation of section 1962” may bring a civil action under RICO. 18 U.S.C. § 1962 sets out the activities RICO prohibits. Sections 1962(a), (b), and (c) set out substantive violations;
 
 [1]
 
 section 1962(d) makes it unlawful “for any person to conspire to violate any of the provisions of sections 1962(a), (b), or (c).” Schiffels contends that she was injured “by reason of” the defendants’ conspiracy because her harassment and eventual firing were acts taken expressly to further the conspiracy. The defendants argue, as the district court held, that Schiffels did not have standing under § 1964(c) because she was not directly injured by any of the defendants’ alleged predicate acts of racketeering activity. The circuits have split on, the issue of whether a person has standing to sue for conspiracy to violate RICO if he is injured by conspirators’ acts that do not constitute predicate acts of racketeering. Compare
 
 Miranda v. Ponce Fed. Bank,
 
 948 F.2d 41, 48 (1st Cir.1991);
 
 Reddy v. Litton Industries, Inc.,
 
 912 F.2d 291, 294-95 (9th Cir. 1990),
 
 cert. denied,
 
 — U.S. —, 112 S.Ct. 332, 116 L.Ed.2d 272 (1991); and
 
 Hecht v. Commerce Clearing House, Inc.,
 
 897 F.2d 21, 25 (2d Cir.1990) (all holding that to have standing to bring RICO conspiracy claim, plaintiff must allege injury directly caused by predicate acts of racketeering) with
 
 Shearin v. E.F. Hutton Group, Inc.,
 
 885 F.2d 1162, 1168-70 (3d Cir.1989) (injury from overt act that furthers RICO conspiracy is sufficient to confer standing, even if overt act is not a predicate act of racketeering). See also
 
 Reddy v. Litton Indus., Inc.,
 
 — U.S. —, 112 S.Ct. 332, 116 L.Ed.2d 272 (1991) (White, J., dissenting from denial of certiorari) (noting split in the circuits);
 
 Flinders v. Datasec Corp.,
 
 742 F.Supp. 929, 932-35 (E.D.Va.1990) (injury from overt act, not necessarily a predicate act of racketeering, is sufficient to confer standing if the overt act is wrongful).
 

 We conclude that the approach expounded in
 
 Shearin
 
 is the correct approach because it is consistent with RICO’s unambiguous language and with traditional concepts of conspiracy law. As we noted in
 
 United States v. Neapolitan,
 
 791 F.2d 489 (7th Cir.1986), RICO conspiracy is governed by traditional concepts of conspiracy law; “a conspiracy to violate RICO should not require anything beyond that required for a conspiracy to violate any other crimes.”
 
 Id.
 
 at 497. Section 1962(d)’s target, like that of all provisions prohibiting conspiracies, is the
 
 agreement
 
 to violate RICO’s substantive provisions, not the actual violations themselves. See
 
 United States v. Glecier,
 
 923 F.2d 496, 500 (7th Cir.),
 
 cert. denied,
 
 — U.S. —, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991);
 
 Shearin,
 
 885 F.2d at 1169;
 
 United States v. Angiulo,
 
 847 F.2d 956, 964 (1st Cir.),
 
 cert. denied,
 
 488 U.S. 852, 109 S.Ct. 138, 102 L.Ed.2d 110 and
 
 cert. denied,
 
 488 U.S. 928, 109 S.Ct. 314, 102 L.Ed.2d 332 (1988);
 
 United States v. Phillips,
 
 664 F.2d 971, 1038 (5th Cir.1981),
 
 cert. denied,
 
 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 and
 
 cert. denied,
 
 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982). Thus, while a conspiracy to violate RICO requires an agreement to commit a pattern of predicate acts,
 
 Neapolitan,
 
 791 F.2d at 499, it does not require that any predicate acts actually be committed.
 
 Shearin,
 
 885 F.2d at 1169;
 
 Phillips,
 
 664 F.2d at 1038.
 

 It is true that an agreement to violate RICO, standing alone, cannot harm anybody. Some act in furtherance of that agreement (an “overt act,” in legal parlance) is necessary. However, since RICO
 
 *349
 
 conspiracy does not require the actual commission of a predicate act, it follows that the act causing plaintiff’s injury need not be a predicate act of racketeering. A person directly injured by an overt act in furtherance of a RICO conspiracy has been injured “by reason of” the conspiracy. Since a conspiracy to violate RICO’s substantive provisions is itself a violation of RICO, see 18 U.S.C. § 1962(d), a person injured “by reason of” the conspiracy has been injured “by reason of” the RICO violation. That is all that § 1964(c) requires for standing to bring a civil RICO action.
 

 The Supreme Court’s decision in
 
 Sedima, S.P.R.L. v. Imrex Co.,
 
 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), does not, as Kemper insists, require a different result. In
 
 Sedima,
 
 the plaintiff alleged that it had been cheated out of money by the defendants’ acts of mail and wire fraud. See
 
 id.
 
 at 483-84, 105 S.Ct. at 3278. The plaintiff sued, alleging that the defendants violated § 1962(c)-(d). The district court dismissed the RICO claims, and the Second Circuit affirmed. The court of appeals held among other things that to have standing under § 1964(c), a plaintiff must allege a “racketeering injury,” which it defined as an injury “ ‘different in kind from that occurring as a result of the predicate acts themselves, or not simply caused by the predicate acts, but also caused by an activity which RICO was designed to deter.’ ”
 
 Id.
 
 at 485, 105 S.Ct. at 3279 (quoting
 
 Sedima, S.P.R.L. v. Imrex Co.,
 
 741 F.2d 482, 496 (2d Cir.1984).
 

 In the course of reversing the Second Circuit’s decision that “racketeering injury” was necessary for standing to sue under RICO, the Court noted that
 

 [w]hen the plaintiff alleges each element of the [RICO] violation, the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise. Those acts are, when committed in the circumstances delineated in § 1962(c), “an activity which RICO was designed to deter.” Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts.
 

 Id.
 
 at 497.
 

 Kemper insists that the quoted language from
 
 Sedima
 
 limits RICO standing to those directly injured by predicate acts of racketeering, even in the case of a conspiracy. We think not. While it is true that the plaintiff in
 
 Sedima
 
 did raise claims under § 1962(c)-(d), the Court’s standing discussion did not directly address § 1962(d). The reason for this seems apparent: there was no need to address standing to raise a § 1962(d) claim, because if a plaintiff, has standing to bring a § 1962(c) claim he necessarily has standing to raise a § 1962(d) claim. Moreover,
 
 Sedi-ma
 
 ’s standing discussion appeared in the context of demonstrating that the Second Circuit’s restrictive reading of § 1964(c) was wrong. It is unlikely that in the course of rejecting an overly restrictive approach to RICO standing, an approach that would not allow standing even in cases where a plaintiff
 
 was
 
 injured by predicate acts, the Court would impose injury from a predicate act as a standing limitation on § 1962(d) without even mentioning that section. Instead, the context of Sedima’s standing discussion and the lack of need to separately discuss standing for a RICO conspiracy action indicate that the Court was only going as far as it needed to decide the case before it and was not imposing a general standing limitation that applied to § 1962(c)-(d).
 

 The other arguments for limiting standing to raise § 1962(d) claims to plaintiffs injured by predicate acts are not persuasive.
 
 Hecht
 
 referred to RICO’s “purpose” to target only predicate acts listed in § 1961(1). See 897 F.2d at 25. In a similar vein,
 
 Miranda
 
 reasoned that because “Congress painstakingly enumerated a complete list of predicate acts in 18 U.S.C. § 1961(1),” allowing a plaintiff to recover for injuries caused by other acts just by pleading a conspiracy “would be tantamount to rewriting the statute.” 948 F.2d at 48. But this ignores that § 1964(c) allows suits by anyone “injured ... by reason of a violation of § 1962.” Section
 
 *350
 
 1962(d) prohibits conspiracies, so a person harmed by the conspiracy has been injured “by reason
 
 of”
 
 a RICO violation. Congress could have written RICO to state that only those injured by reason of predicate acts committed as part of a RICO violation could sue. It did not, and for courts to read § 1964(c) as if that is what Congress wrote would be “tantamount to rewriting the statute.”
 

 Underlying the desire to limit standing to raise RICO conspiracy claims seems to be the notion that, as the district court candidly put it, “some limits must be put on [RICO’s] reach.” See 767 F.Supp. at 912. The desire to limit civil RICO litigation is understandable. But the Supreme Court has told us that “RICO is to be read broadly,” not only because of “Congress’ self-consciously broad language,” but also because “of its express admonition that RICO is to ‘be liberally construed to effectuate its remedial purposes.’ ”
 
 Sedima,
 
 473 U.S. at 497-98 (quoting Pub.L. 91-452, § 904(a), 84 Stat. 947). A reading of §§ 1962(d) and 1964(c) that limits standing to sue for RICO conspiracy only to those injured by predicáte acts — a limitation that does not appear on the face of those sections and is inconsistent with a natural reading of those sections — is inconsistent with this dictate.
 

 In any event, civil RICO liability is not unlimited even under Shearin’s approach to standing. In
 
 Holmes v. Securities Investor Protection Corp.,
 
 — U.S. — , 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), the Supreme Court held that the common law principle of proximate cause provides a limit on standing to sue under RICO. Proximate cause embodies more than the requirement that “but for” the RICO violation, the plaintiff’s injury would not have occurred.
 
 Id.
 
 — U.S. at — , 112 S.Ct. at 1316. Rather, proximate cause “reflects ‘ideas of what justice demands, or of what is administratively possible and convenient.’ ”
 
 Id.
 
 — U.S. at — , 112 S.Ct. at 1318 (quoting W. Page Keeton, et al.,
 
 Prosser and Keeton on the Law of Torts
 
 § 41, at 264 (5th ed. 1984)). In other words, proximate cause is a means of limiting the potentially limitless liability flowing factually from a person’s acts.
 

 At common law, the concept of proximate cause required, among other things, “some direct relation between the injury asserted and the injurious conduct alleged.”
 
 Id.
 
 Therefore, the Court held in
 
 Holmes
 
 that a person did not have standing to sue. under RICO based on the theory that a RICO violation inflicted injury on a third party, which injury in turn caused injury to the plaintiff.
 
 Id.
 
 — U.S. at —, 112 S.Ct. at 1319-21.
 

 In a concurring opinion in
 
 Holmes,
 
 Justice Scalia argued that standing under § 1964(c) depends not only on proximate causation but also on the “ ‘zone of interests’ test, which seeks to determine whether, apart from the directness of the injury, the plaintiff is within the class of persons sought to be benefitted by the provision at issue.”
 
 Id.
 
 — U.S. at —, 112 S.Ct. at 1328. Although “zone of interests” depends in large part on limitations written into a statute, those limitations do not preclude judicial inference of others.
 
 Id.
 
 Thus, while RICO’s zone of interests does not extend beyond any person “injured in his business or property by reason of” the RICO violation, it does not necessarily include all those injured “by reason of” the RICO violation.
 
 Id.
 

 Holmes
 
 is one example of the type of case in which RICO standing is limited by proximate.cause or zone of interest principles even though the plaintiff has been injured “by reason of” a RICO conspiracy in the sense that the conspiracy was a “but for” 'cause of the injury. A more graphic example would be where a group of people conspire to operate an arson-for-hire enterprise. While driving to buy gasoline with which to start fires, one of the conspirators collides with and seriously damages another automobile. Although the damage to the automobile is injury to property “by reason of” an act to further the RICO conspiracy, it would be absurd to suggest that the owner of the damaged automobile could sue under RICO; other than “but for” causation, the damage has nothing to do with RICO. Another example could in
 
 *351
 
 volve a person who refused to go along with a fraudulent scheme. After the scheme is over, a conspirator fires the employee simply to retaliate for his refusal to go along. The conspiracy would be a “but for” cause of thé fired employee’s injury (that is, he would not have been fired if the conspiracy had not existed), but it would not be the proximate , cause; the conspiracy had ended and the injury is remote from the conspiracy and its purposes.
 

 Those examples are poles apart from a case such as
 
 Shearin
 
 (or this one, as Schiffels would tell it), in which an employee is fired to prevent the employer from causing the conspiracy to unravel by disclosing the scheme. Unlike in
 
 Holmes,
 
 the employee has been directly, injured by the defendant’s RICO violation. Just as important, the act causing the injury has been committed to further the conspiracy and is directly related to the conspiracy’s goals. This brings the injured employee well within the zone of interests RICO is meant to protect. After all, RICO, which grants standing to anyone injured in his business or property “by reason of” a RICO violation, prohibits conspiracies, which do not require the commission of any predicate offenses.
 

 The defendants contend that this court is not free to adopt Shearin’s approach to RICO conspiracy standing because in
 
 Rylewicz v. Beaton Services, Ltd.,
 
 888 F.2d 1175 (7th Cir.1989), we decided that standing to bring a RICO conspiracy action requires that a plaintiff be injured by a predicate act. In
 
 Rylewicz,
 
 the plaintiffs sued defendants for violating § 1962(c)-(d), alleging that the “defendants had engaged in various acts of ‘harassment, intimidation and terrorism’ ” against them to force them to accede to a compromise of a jury verdict the plaintiffs had won in another case.
 
 Id.
 
 at 1178. Among the overt acts in furtherance of the conspiracy, the plaintiffs alleged that one of the defendants had induced a plaintiff’s employer to fire him.
 
 Id.
 
 at 1179. This court held that the firing was not sufficient to give the plaintiff standing to sue under RICO because the plaintiff’s damage “was not caused by the predicate acts.”
 
 Id.
 

 Rylewicz
 
 could be read to require that RICO conspiracy plaintiffs must allege injury resulting from predicate acts to have standing to sue. However, the court did not expressly address standing under § 1962(d) or distinguish between § 1962(c)-(d) for purposes of standing. It is possible that the parties in
 
 Rylewicz
 
 did not even raise the distinction between the two sections. Moreover, the only authority the court cited for its standing decision was
 
 Sedima,
 
 which, as we have seen, did not address standing under § 1962(d). Given this, while
 
 Rylewicz
 
 may be binding regarding standing in RICO conspiracy cases, its reasoning is not sufficiently focused to persuade us that our present analysis is incorrect. Therefore, for the reasons we have stated above, we reject
 
 Rylewicz
 
 to the extent that it held that a RICO conspiracy plaintiff has standing only if he alleges injuries resulting from predicate acts of racketeering.
 
 [2]
 

 III.
 

 Schiffels thus has standing to sue under RICO if her complaint alleges an injury to her business or property proximately caused by an overt act in furtherance of a conspiracy to violate RICO, even though the overt act is not a predicate act required in a RICO pattern. This presupposes that Schiffels has properly alleged a conspiracy to violate RICO in the first place. Schif-fels’ theory is that the defendants conspired to violate § 1962(c) by conducting the affairs of an enterprise — the Kemper Plan — by. a pattern of mail fraud. The defendants harassed and eventually fired her, she says, to further the conspiracy by keeping her from revealing the fraudulent scheme.
 

 The defendants argue that Schiffels has not properly alleged either a conspiracy to violate § 1962(c) or an injury
 
 *352
 
 connected to any RICO violation. We agree with the defendants that Schiffels’ complaint is deficient in several respects. To allege a conspiracy to violate § 1962(c), Schiffels had to plead that each defendant agreed to conduct the affairs of an enterprise, that each agreed to the commission of at least two predicate acts, and that each defendant knew that those predicate acts were part of a pattern of racketeering activity. See
 
 Rose v. Bartle,
 
 871 F.2d 331, 366 (3d Cir.1989);
 
 Hecht,
 
 897 F.2d at 25; see also
 
 Neapolitan,
 
 791 F.2d at 499. Conclusory allegations of “conspiracy” are not sufficient to state a claim under § 1962(d); rather, Schiffels must allege facts from which one can infer each defendant’s agreement to violate § 1962(c). See
 
 Otto v. Variable Annuity Life Ins. Co.,
 
 814 F.2d 1127, 1137 (7th Cir.1986),
 
 cert. denied,
 
 486 U.S. 1026, 108 S.Ct. 2004, 100 L.Ed.2d 235 (1988); see also
 
 Rose,
 
 871 F.2d at 366 (conspiracy claim must contain “supportive factual allegations” sufficient to describe the conspiracy’s general composition, its objectives, and the defendant’s general role in the conspiracy).
 

 Schiffels’ complaint has several problems along those lines. The most obvious is that the complaint doesn’t even mention En-gling, whom Schiffels nevertheless contends is one of the alleged conspirators, aside from saying who he is. There is nothing in the complaint from which we can infer Engling’s role in the alleged conspiracy, or whether he even knew about (much less agreed to help further) Richards’ scheme.
 

 Failing to mention Engling’s role is the least of Schiffels’s problems. It is unclear whether Schiffels has properly alleged that any of the defendants agreed with each other to the commission of any predicate acts. As far as we can tell from the complaint, Richards’ actual scheme— the scheme to misallocate trading gains and losses among the different funds— ended by October 1987, before any of the other defendants entered the picture. If Schiffels is depending on an agreement to participate in Richards’ scheme, her complaint does not allege any agreement to do so; the other conspirators could not agree to commit predicate acts that had already occurred. Read most naturally, the complaint seems to allege two separate episodes of conduct: Richards’ plot to enrich the Kemper Plan at the mutual funds’ expense; and a separate conspiracy between all the defendants to cover up what Richards had done. A conspiracy to cover up a past RICO violation is not necessarily a conspiracy to violate RICO, because the conspiracy to cover up does not necessarily include an agreement to the commission of a pattern of predicate acts. It might be that Richards’ scheme went on after the other defendants agreed- to keep Schiffels from exposing it, in which case it would be possible to infer that the defendants agreed to the commission of predicate acts. But other than the bald assertion that Richards’ scheme was “ongoing,” the complaint as • it stands now does not support that conclusion.
 

 Schiffels’ complaint did allege that the defendants agreed to send out fraudulent mailings to cover up Richards’ scheme. Perhaps, then, the conspiracy to cover up Richards’ scheme constituted a separate scheme to violate RICO. However, the allegations of fraudulent mailings fail to meet Fed.R.Civ.P. 9(b)’s requirement that “the circumstances constituting fraud ... shall be stated with particularity.” This means that the complaint must state “the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated----”
 
 Bankers Trust Co. v. Old Republic Ins. Co.,
 
 959 F.2d 677, 683 (7th Cir.1992) (citations omitted); see also
 
 Graue Mill Dev. Co. v. Colonial Bank & Trust Co.,
 
 927 F.2d 988, 992-93 (7th Cir. 1991). Schiffels’ complaint does set out the general subject matter of the alleged misrepresentations (the omission of material information concerning Richards’ trading). But the complaint does not even mention the general time frame in which the reports were sent, much less pin down or even approximate any dates. Nor does the complaint provide any detail as to the precise reports involved or who prepared or sent
 
 *353
 
 the reports. It is true that Rule 9(b) may require less detail if a plaintiff alleging fraud against a third party does not have access to all the facts necessary to detail his claim. See
 
 Segal v. Gordon,
 
 467 F.2d 602, 607 (2d Cir.1972); 2A James W. Moore et al.,
 
 Moore’s Federal Practice
 
 ¶ 9.03[1], at 9-29 (2d ed. 1992). However, Schiffels does not suggest that she did not have access to the allegedly fraudulent documents. Indeed, the fact that she alleges fraudulent documents were sent indicates that she had some access to those documents; how else would she know that the documents omitted material information?
 

 Schiffels’ complaint is very vague about the temporal relationship between Richards’ scheme and the alleged agreement of the other defendants, and about how long Richards’ scheme actually lasted, or how long fraudulent documents were sent. This makes it difficult to determine whether the predicate acts Schiffels has alleged the defendants agreed to commit (assuming she has properly alleged any such predicate acts) amount to a pattern of racketeering activity. To allege a pattern, Schiffels must allege facts from which one-may infer that the predicate acts were both related and continuous.
 
 H.J., Inc. v. Northwestern Bell Tel. Co.,
 
 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). At issue here is continuity, that is that the acts occurred “over a substantial period of time” or that the acts demonstrate “a specific threat of repetition extending indefinitely into the future.”
 
 Id.
 
 at 242, 109 S.Ct. at 2902. RICO is concerned “with long-term criminal conduct,” not with short-lived episodes of crime unlikely to be repeated. See
 
 id.
 
 The vagueness of Schiffels’ complaint concerning the time frame of the alleged fraud in this case makes it impossible to determine which side of the line the alleged fraud falls.
 

 Finally, we question whether Schiffels has properly alleged any injury to her business or property proximately caused by a conspiracy to violate RICO. It is hard to see how the defendants’ alleged hárassment injured her business or property. Schiffels was placed on
 
 paid
 
 leaves of absence, and she does not allege that she lost any pay or other property because of the harassment. The defendants’ actions might have caused Schiffels embarrassment, humiliation, and emotional distress, but injury “to business or property” does not include such personal injuries, even if those injuries resulted in a pecuniary loss.
 
 Berg v. First State Ins. Co.,
 
 915 F.2d 460, 464 (9th Cir.1990).
 

 Schiffels’ firing, while probably an injury to her “business,” does not appear- to be directly related to any conspiracy to violate RICO. By the timé Schiffels was fired, Richards had been long goné from Kemper. There is no allegation that any of the other defendants carried on his original scheme (as opposed to just covering it up). Moreover, the complaint’s vagueness as to the time during which any fraud actually occurred makes it impossible to relate temporally Schiffels’ firing to the fraud. The complaint itself alleges that by the time Schiffels was fired, Kemper had itself investigated Richards’ alleged scheme; Kem-per had hired an independent auditor to investigate the scheme; the FBI had investigated the scheme; and a lawsuit concerning the scheme had been filed and dismissed. If anything, these allegations indicate that by the time Schiffels was fired, any fraudulent scheme had ended. Since there is nothing in the complaint from which one can infer that the conspiracy to violate RICO was still ongoing at the time of Schiffels’ firing, a fair reading of Schif-fels’ complaint indicates only that she was fired in retaliation for attempting to disclose the fraudulent scheme, not to further it or prevent its disclosure.
 

 The defendants raise other deficiencies in Schiffels’ complaint that we need not detail. Suffice it to say that as it' now stands, Schiffels’ complaint is subject to dismissal under Fed.R.Civ.P. 12(b)(6) does not adequately set forth that she was directly injured by a conspiracy to violate RICO. However, because the district court incorrectly held that only injuries directly resulting from predicate acts are sufficient to confer standing to sue for a conspiracy to violate RICO, it did not consider the
 
 *354
 
 sufficiency of Schiffels’ complaint or give her an opportunity to amend. The defendants had not filed an answer when the district court dismissed Schiffels’ RICO claim. Federal Rule of Civil Procedure 15(a) provides that “[a] party may amend the party’s pleading once as a matter of course at any time before a responsive pleading is due.” Since Schiffels did not have an opportunity to amend her complaint in the district court, we will remand this case to the district court to give her that opportunity. The defendants of course are free to move to dismiss Schif-fels’ amended complaint and the district court, if it does dismiss the amended complaint, may decide in its discretion whether to allow any further amendments.
 

 Reversed and Remanded.
 

 [1]
 

 . Section 1962(a) makes it unlawful to "invest, directly or indirectly” income "derived ... from a pattern of racketeering activity or through collection of an unlawful debt” to acquire, establish or operate any "enterprise.” Section 1962(b) makes it unlawful to "acquire or maintain ... any interest in or control of any enterprise” through a pattern of racketeering activity. Section 1962(c), which Schiffels alleges the defendants conspired to violate, makes it unlawful "to conduct or participate ... in the conduct of [an] enterprise’s affairs through a pattern of racketeering activity.”
 

 [2]
 

 . Because of the possible conflict with
 
 Rylewicz,
 
 this opinion has been circulated to the full court pursuant to Circuit Rule 40(f). No judge favored a rehearing en banc on the question of standing for a plaintiff bringing a RICO conspiracy claim.