David MENDELOVITZ,
Plaintiff–Appellant,

v.

John J. VOSICKY, Robert A. Bardagy, Kenneth N. Pontikes, Edward H. Fiedler, Jr., Rick Kash, John F. Slevin, Basil R. Twist, Jr., C. Keith Hartley, William N. Pontikes, and Thomas H. Patrick, Defendants–Appellees,

and

Comdisco, Inc., Nominal Defendant–Appellee.

No. 93–3508.

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1994.

Decided Nov. 14, 1994.

burden. 163 B.R. at 997–98.

Robert D. Allison, Chicago, IL, Joseph H. Weiss (argued), Moshe Balsam, David C. Katz, New York City, for David Mendelovitz.

Barbara S. Steiner, Ronald L. Marmer (argued), Jerold S. Solovy, C. John Koch, Jenner & Block, Chicago, IL, for John J. Vosicky, Robert A. Bardagy, Kenneth N. Pontikes, Edward H. Fiedler, Jr., Rick Kash, John F. Slevin, Basil R. Twist, Jr., C. Keith Hartley, William N. Pontikes, Thomas H. Patrick.

Eugene E. Gozdecki, David S. Americus, Howard A. Voeks, Richard A. Del Giudice, Gozdecki & Del Giudice, Chicago, IL, for Comdisco, Incorporat.

Before WOOD, Jr., COFFEY, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

David Mendelovitz brought this shareholder derivative suit on behalf of Comdisco, Inc. against ten of Comdisco's directors, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Mendelovitz' suit, at bottom, is based on a lease dispute between Comdisco and International Business Machines Corporation ("IBM"). Comdisco is the world's largest independent leasing company of computer systems and equipment, and IBM is the world's largest manufacturer of computers. The dispute, which has generated two state court actions and one federal court action, stems from Comdisco subleasing an IBM mainframe computer system, the Model 3090, and selling some of its component parts. In simplified terms, IBM alleges Comdisco breached its lease with IBM in three ways. First, Comdisco routinely subleased the Model 3090 to other entities for periods longer than Comdisco's lease, a practice called overleasing. Second, IBM alleges Comdisco unlawfully transferred and sold component parts of the leased computer systems. Third, Comdisco allegedly misrepresented the lessors' rights to have IBM provide maintenance for the systems. Comdisco contends the leases contemplate such actions and industry custom and practice was to engage in such activities.

Mendelovitz attempts to convert this lease dispute into a RICO complaint based upon the "concealment" of what he refers to as a "computer chop-shop." The RICO predicate acts that make up the alleged concealment boil down to statements made in press releases, SEC filings, and letters to customers to the effect that Comdisco had the right to engage in the activities described above.[1] Mendelovitz claims damages to the corporation in the form of 1) attorneys' fees and potential damages from the IBM litigation and any future litigation over the same issue by other parties and 2) loss of goodwill and

---

1. Appellant claims these statements were fraudulent, in that such statements were clearly contradicted by the Master Lease Agreement between IBM and Comdisco. The Delaware Superior Court, however, did not believe the lease was so clear as to grant IBM's summary judgment motion.

reputation, with a resultant decline in present and future sales.

Courts have held that a plaintiff must prove more than mere cause-in-fact, namely proximate cause, to support a cause of action under RICO. In determining whether proximate cause exists, courts historically have held that "[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step." *Southern Pacific Co. v. Darnell–Taenzer Lumber Co.*, 245 U.S. 531, 533, 38 S.Ct. 186, 186, 62 L.Ed. 451 (1918) (Holmes, J.). "Thus, a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover." *Holmes v. Securities Investor Protection Corp.*, —— U.S. ——, ——, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992). Beyond this, however, courts have differed on what level of "directness" a litigant must prove between the litigant's damages and the wrongdoer's acts in a RICO action.

The Supreme Court recently gave some guidance on this question. In *Holmes v. Securities Investor Protection Corp.*, the Securities Investor Protection Corporation (SIPC) filed a RICO claim against Robert G. Holmes, Jr. and approximately 75 other defendants for conspiring to manipulate stock prices in violation of Rule 10b–5; this fraudulent conduct allegedly caused two brokers to fail to meet their obligations to their customers. Under the Securities Investor Protection Act, most broker-dealers trading in securities are required to register as members of SIPC. Whenever SIPC determines that a member is not able to fulfill its obligations to its customers, it requests a federal court enter a protective decree, pursuant to which the court appoints a trustee to liquidate the member's business for reimbursement to the jilted customers. If there is a shortfall in funds to cover the debts, SIPC is statutorily required to advance up to $500,000 per customer to the trustee for claim satisfaction. SIPC alleged that the defendants' stock manipulations and conspiracy constituted a "pattern of racketeering activity" within the meaning of RICO.

The District Court entered summary judgment for Holmes on SIPC's RICO claims, basing its decision on two findings. First, the court held that SIPC did not meet the "purchaser-seller" standing requirement for RICO claims that are based on Rule 10b–5 violations. Second, the court held that the plaintiff had not satisfied RICO's proximate cause requirement. The Ninth Circuit reversed the trial court on both grounds, and the Supreme Court reversed the Ninth Circuit, although the majority did not reach the "purchaser-seller" issue.

In *Holmes*, the Court first confronted whether RICO contains a proximate cause requirement at all, relying heavily on its experience with the antitrust laws. The Court drew from the analysis presented in *Associated General Contractors of California, Inc. v. Carpenters*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). In *Carpenters*, the Court concluded that Section 4 of the Clayton Act requires a plaintiff to prove proximate cause, even though no such requirement is clear from the face of the statute. The Court invoked the judicial presumption that Congress legislates against the background of prior judicial interpretations of statutes that it uses as models; Congress had modeled Section 4 on Section 7 of the Sherman Act, which lower federal courts had interpreted (prior to the enactment of Section 4) as requiring proof of proximate cause. Thus, because courts presume Congress to intend that language used in one place will have the same meaning when used in another, Section 4 contains a proximate cause requirement. So it is with RICO; "Congress modeled § 1964(c) [a portion of the RICO statute] on the civil-action provision of the federal antitrust laws, § 4 of the Clayton Act...." *Holmes*, —— U.S. at ——, 112 S.Ct. at 1317. Therefore, Justice Souter concluded, "We may fairly credit the 91st Congress, which enacted RICO, with knowing the interpretation federal courts had given the words earlier Congresses had used.... It used the same words, and we can only assume it intended them to have the same meaning that courts had already given them. Proximate cause is thus required." *Id.* at ——, 112 S.Ct. at 1317–18.

Having disposed of the issue of whether RICO contained *any* proximate cause requirement, the Court proceeded to inquire into the parameters of the standard. Its attention was centered on one element of proximate cause: the "directness of the relationship" between the harm alleged and the wrongful conduct. The Court stated, "among the many shapes this concept took at common law was a demand for some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at ——, 112 S.Ct. at 1318.

■ Upon this conceptual rock, Mendelovitz' claim founders. His alleged damages pass through many intermediaries, both identified and unidentified.[2] The damages alleged fall into two main categories: expenses from the litigation with IBM (including both attorneys' fees and potential damages) and decreased present and future sales from loss of goodwill.[3] Neither of these sets of damages is imposed on Comdisco *directly* from the alleged predicate acts or by an action in furtherance of the alleged RICO conspiracy itself.[4] Both sets require actions and decisions by third parties before coming into being.

■ In *Holmes*, the Supreme Court explained that a number of reasons favor requiring a direct relationship between the RICO acts and the asserted damages, two of

which are directly relevant here. "First, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors, * * * say, the broker-dealers' poor business practices or their failures to anticipate developments in the financial markets." *Id.* at ——, 112 S.Ct. at 1318, 1320. This factor similarly weighs against Mendelovitz. Determining to what extent Comdisco's sales were or will be harmed by its directors' allegedly illegal actions would be at best an enormously complex, and at worst a futile, endeavor. Determining what portion of the IBM litigation expenses are attributable to the allegedly illegal actions as opposed to legitimate (albeit erroneous) business decisions[5] would be equally difficult. In addition to ascertaining contribution of factors, as the IBM litigation is still ongoing, a court would need to determine the probability that IBM will prevail against Comdisco, and if so, to what extent.

Additionally, the Court stated, "the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely." The litigation between IBM and Comdisco proves

---

2. The main known intermediary is IBM. The unidentified, and for the most part unidentifiable, intermediaries include customers that in the future may file a suit similar to IBM's and any customer that, because of the "scandal," decided not to do business with Comdisco.

3. "While defendants' actions, in the short run, may have resulted in a temporary enhancement of Comdisco's earnings, those actions, in the long run, have damaged Comdisco gravely by undermining its reputation, integrity, and credibility with customers and suppliers, in huge costs arising out of litigation to defend Comdisco from lawsuits and in damages which will have to be paid by Comdisco to IBM and/or others." Brief of Plaintiff-Appellant at 5–6.

4. This Circuit does not require that a RICO plaintiff who is claiming damages under § 1962(d) have been harmed by a predicate act. It is enough that the plaintiff was directly harmed by some action taken to further the purposes of the conspiracy. *See Schiffels v. Kemper*

*Financial Servs., Inc.*, 978 F.2d 344, 351 (7th Cir.1992). Yet this does not save Mendelovitz' claim. He has made no allegation that the purported conspiracy took any action *against the corporation* to further the conspirators' goals.

5. The directors' decisions may be protected by the *Business Judgment Rule.*

> If in the course of management, directors arrive at a decision, within the corporation's powers (*intra vires*) and their authority, for which there is a reasonable basis, and they act in good faith, ... a court will not interfere with internal management and substitute its judgment for that of the directors to enjoin or set aside the transaction or to surcharge the directors for any resulting loss.

Harry G. Henn & John R. Alexander, Laws of Corporations § 242 at 661 (1983); *see, e.g., Treco, Inc. v. Land of Lincoln Savs. & Loan*, 749 F.2d 374, 377 (7th Cir.1984); *Selcke v. Bove*, 258 Ill.App.3d 932, 196 Ill.Dec. 202, 203, 629 N.E.2d 747, 750 (1994).

this statement prophetic. Moreover, the reason for the attempt of Mendelovitz to rely on the RICO statute is apparent: the availability of treble damages. But RICO offers these heightened damages in return for a valued service—the discovery and exposure of the predicate acts. *See In re Teledyne Defense Contracting Derivative Litigation,* 849 F.Supp. 1369, 1375 (C.D.Cal.1993); *cf. Carter v. Berger,* 777 F.2d 1173, 1176–77 (7th Cir.1985) (discussing incentive for plaintiff to bring antitrust action due to availability of treble damages). Mendelovitz has not performed that service. As the director-defendants point out, "plaintiff essentially repeats verbatim IBM's allegations contained in IBM's complaints against Comdisco ... [adding] nothing but numerous and varied pejorative labels." Mendelovitz is attempting a free-ride on the work done by IBM.[6]

Although we are the first circuit to address this precise question in light of *Holmes,* we are not without some guidance. In *Firestone v. Galbreath,* 976 F.2d 279 (6th Cir.1992), the plaintiffs were the beneficiaries of an inter vivos trust. They claimed that the defendants had misappropriated funds from the decedent's estate, which constituted the trust fund. The Sixth Circuit, interpreting *Holmes,* held that the beneficiaries did not have standing under RICO.

> The Grandchildren allege that by stealing from their grandmother during her lifetime, the defendants decreased the size of Dorothy Galbreath's estate, and consequently the size of their inheritance. This is only an indirect injury because any harm to the Grandchildren flows merely from the misfortunes allegedly visited upon Dorothy Galbreath by the defendants.

*Id.* at 285 (citation omitted).

Similarly, in *Pillsbury, Madison & Sutro v. Lerner,* 31 F.3d 924 (9th Cir.1994), the plaintiff, Pillsbury, Madison & Sutro (PM & S), claimed damages under RICO against various people who owned the building in which PM & S' offices were located. PM & S claimed that the defendants conducted fraudulent sales of the building to inflate the value of the building, and hence their rent. The Ninth Circuit found proximate cause lacking, essentially because PM & S subleased the office space from another entity. "[I]n this case the direct harm runs to SRC, the master tenant, which is responsible for the payment of the rent whether or not it collects any of the increase from the sublessees.... Pillsbury is not directly injured by the alleged sham sales of the building...." *Id.* at 928–29. The court explained that the plaintiff's harm was completely contingent on the master tenant's decision to pass the rent increase through to the subletter. Such is the situation in this case. Any damages that Comdisco purportedly may have incurred flow from IBM's decision to sue Comdisco; had IBM not sued, neither set of damages that Mendelovitz alleges could exist.

Additionally, at least two district courts have been presented with the very question before us: whether a corporation has standing to sue for damages under RICO against its directors for alleged RICO violations against a third party. Both answered the question in the negative. *See In re Teledyne Defense Contracting Derivative Litigation,* 849 F.Supp. 1369 (C.D.Cal.1993); *General Electric Co. v. Rowe,* 1992 WL 277997 (E.D.Pa.1992).

Both sides in this case refer us to our decision in *Schiffels v. Kemper Financial Services, Inc.,* 978 F.2d 344 (7th Cir.1992). Although the issue in *Schiffels* was slightly different—whether a plaintiff who alleged that she was fired from her job because she was attempting to "blow the whistle" on defendants' alleged RICO conspiracy had standing under RICO—we did discuss and analyze *Holmes.* Indeed, we find support in *Schiffels* for our analysis in this case. In *Schiffels,* we concluded that the plaintiff had been directly injured by the RICO conspiracy and thus held that the plaintiff had RICO

---

6. One reason listed by the Court for requiring a direct relationship between the plaintiff's damages and the defendant's actions is inapplicable in this case. In *Holmes,* had the court allowed the plaintiff to recover RICO damages, there would have been a danger of multiple entities recovering damages for the same injury. In this case, the damages alleged by Mendelovitz are separate and distinct from those alleged by IBM, even though they are totally dependent on IBM's damages.

standing. In explaining the holding we stated, "Unlike in *Holmes*, the employee has been directly injured by the defendant's RICO violation.... [T]he act causing the injury ... is directly related to the conspiracy's goals." *Id.* at 351. No intervening actors or causes were present in *Schiffels*. Here, none of the damages that Mendelovitz alleges emanate directly from defendants' actions; but for the litigation instituted by IBM, none of the alleged damages would have arisen.

Thus, under RICO, a corporation does not have standing to sue for damages allegedly accruing from the actions of its directors or officers against third parties, because there can be no proximate cause.[7] Although the district court did not address this argument, and dismissed Mendelovitz' claim on other grounds, we may affirm a district court's judgment on any grounds found in the record, as long as the argument has not been forfeited. *O'Connor v. Chicago Transit Authority*, 985 F.2d 1362, 1368 (7th Cir.1993). Each party briefed the issue to both the district court and this court, and therefore the issue is properly before us.

Our holding does not leave Comdisco remediless for the actions that Mendelovitz complains of; RICO just is not the proper vehicle. Contrary to the assertion of Mendelovitz, this is a "garden variety business fraud masquerading as a RICO claim."

Attached to this litigation, through the exercise of pendent jurisdiction, was a state law claim against the directors for breach of fiduciary duty. The district court, after dismissing with prejudice Mendelovitz' federal claims, dismissed without prejudice the state claim for lack of independent subject matter jurisdiction. Thus, Mendelovitz may be able to pursue this claim in state court, assuming other procedural and substantive requirements are met.

The judgment of the district court dismissing the federal RICO claim of Mendelovitz with prejudice, and dismissing the state law

claims of Mendelovitz without prejudice, is AFFIRMED.

---

7. Mendelovitz also appears to be claiming an individual cause of action as well, although this claim is sketchy and has not been developed. Nonetheless, Mendelovitz' individual RICO damages (which are unspecified) would not meet the proximate cause requirement. In fact, his damages would be even more remote, because they would be derivative of the corporation's damages.