156 F.3d 721
 RICO Bus.Disp.Guide 9555
 Judith GOREN, individually and on behalf of all others
similarly situated, Plaintiff-Appellant,
v.
NEW VISION INTERNATIONAL, INCORPORATED, Joel Wallach,
Doctor, D.V.M., Kelly Enterprises, et al.,
Defendants-Appellees.
 No. 97-3785.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 16, 1998.
Decided Sept. 2, 1998.
 
 Daniel A. Edelman (argued), Adam B. Goodman, Edelman & Combs, Chicago, IL, for plaintiff--appellant.
 Robert E. Miles (argued), James A. Ryan, Phoenix, AZ, Bradley B. Falkof, Scott T. Longman, Barnes & Thornburg, Chicago, IL, Edwin B. Wainscott, Phoenix, AZ, for New Vision International Inc.
 Paul F. Donahue, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Kelly Enterprise and October Dynamics.
 Bradley B. Falkof, Scott T. Longman, Barnes & Thornburg, Chicago, IL, Edwin B. Wainscott, Robert E. Miles, James A. Ryan, Phoenix, AZ, for Direct Marketing Services, Inc.
 Dawn M. Cassie, Hamman & Benn, Chicago, IL, Elena L. Haskins, Bonita, CA, for Joel Wallach.
 Before FLAUM, RIPPLE and DIANE P. WOOD, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 Judith Goren initiated this action against ten defendants: New Vision International, Inc. ("New Vision"), Benson Boreyko, Jason Boreyko, Ben Boreyko, Karen Boreyko and Lynne Boreyko (collectively, "the Boreykos"), Dr. Joel Wallach, Kelly Enterprise ("Kelly"), October Dynamics ("October") and Direct Marketing Services ("Direct"). In four separate counts in her amended complaint, Ms. Goren alleges that defendants Wallach, October, Direct and the Boreykos, respectively, violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, by collaborating with the other defendants in a scheme to sell bogus health care products. In another count, Ms. Goren alleged that all defendants violated the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903, by virtue of their participation in the same scheme. The district court dismissed all of Ms. Goren's RICO claims pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) for failure to plead fraud with particularity and failure to state a claim for relief. Having dismissed all of the claims over which it had original jurisdiction, the district court dismissed Ms. Goren's state law claim for lack of subject matter jurisdiction. For the reasons set forth in the following opinion, we affirm the district court's judgment of dismissal.
 
 
 2
 * BACKGROUND
 
 A. Facts[1]
 
 3
 In September 1996, Ms. Goren sent for a free audio tape entitled "Dead Doctors Don't Lie," which contains a speech by Dr. Wallach. The tape was sent by Kelly and was manufactured by Direct. On the tape, Dr. Wallach claims that almost all health problems are the result of mineral deficiencies. Dr. Wallach then promotes mineral supplements manufactured by New Vision as a panacea for the listener's ailments. After listening to the tape, Ms. Goren called a toll-free number provided on the label of the tape and purchased two bottles of New Vision's "Essential Minerals." A few weeks later she received her order in the mail, along with two copies of Dr. Wallach's tape, an information pack from October and order forms from Direct and October. On three subsequent occasions, Ms. Goren received mail from October claiming that it specialized in health research and information and that it had tested New Vision's products. She alleges that "Essential Minerals" is nothing more than overpriced tap water and that the material sent to her by the various defendants contained many misrepresentations.
 
 
 4
 Ms. Goren alleges that her experience with the defendants is but one example of the fraudulent conduct regularly engaged in by the defendants. Specifically, she alleges that New Vision and the other defendants are engaged in a scheme to market bogus heath care products. This scheme is carried out by means of a multi-level marketing plan or "pyramid scheme." New Vision and the other defendants recruit individuals not only to sell New Vision's products but also to recruit other distributors. These "distributors" are then compensated on the basis of their sales and the sales of any other individuals whom they recruit. The defendants encourage the distributors to purchase bulk quantities of promotional materials manufactured by the defendants, including Dr. Wallach's tape "Dead Doctors Don't Lie." In addition, October offers the distributors the option of using it as a "business partner" by having it handle telephone inquiries or orders from individuals who received the distributors' promotional tapes.
 
 B. Proceedings in the District Court
 
 5
 Based on the alleged facts set forth above, Ms. Goren filed an amended class action complaint against the Boreykos, New Vision, Direct, October, Kelly and Dr. Wallach. In Count I, Ms. Goren alleged that all defendants violated the Michigan Consumer Protection Act by virtue of their participation in the scheme to market New Vision's bogus health care products. In Counts II-V, relying on the same factual predicate, Ms. Goren brought RICO claims against Dr. Wallach, the Boreykos, Direct and October, respectively.
 
 
 6
 The district court dismissed Ms. Goren's amended complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) for failure to plead fraud with particularity and failure to state a claim upon which relief could be granted. Specifically, the court held that, with respect to the RICO complaints against the Boreykos, Direct and October, the amended complaint failed to allege with particularity two predicate acts of fraud committed by those defendants. In addition, the court held that the amended complaint failed to adequately allege RICO claims against Dr. Wallach, Direct and October because that complaint did not allege that those defendants played some role in the direction of the New Vision enterprise. See Reves v. Ernst & Young, 507 U.S. 170, 177-78, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) (holding that, in order to plead adequate RICO complaint, plaintiff must allege that defendant had some part in the direction of the alleged enterprise's affairs).
 
 II
 DISCUSSION
 
 7
 We review de novo the district court's decision to dismiss, taking Ms. Goren's factual allegations as true and drawing all reasonable inferences in her favor. See Kauthar SDN BHD v. Sternberg, 149 F.3d 659, (7th Cir. 1998). We shall affirm the district court's order of dismissal only if " 'it appears beyond doubt that [Ms. Goren] can prove no set of facts in support of [her] claim which would entitle [her] to relief.' " Strasburger v. Board of Educ., 143 F.3d 351, 359 (7th Cir.1998) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Allegations of fraud, however, are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead "all averments of fraud ... with particularity." Rule 9(b) is of course applicable to allegations of fraud in a civil RICO complaint. See Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 777 (7th Cir.1994); Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1020 (7th Cir.1992). Accordingly, a RICO plaintiff "must, at a minimum, describe the predicate acts [of fraud] with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud." Midwest Grinding, 976 F.2d at 1020. Moreover, in a multiple defendant case, Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme. See Vicom, 20 F.3d at 778.
 
 A.
 
 8
 When Congress enacted RICO, it chose to supplement criminal enforcement of its provision by providing that "[a]ny person injured in his business or property by reason of a violation of section 1962" may bring a civil action under RICO. 18 U.S.C. § 1964(c). The conduct prohibited by RICO is set forth in 18 U.S.C. § 1962, which provides as follows:
 
 
 9
 § 1962. Prohibited activities
 
 
 10
 (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.
 
 
 11
 (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
 
 
 12
 (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
 
 
 13
 (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.
 
 
 14
 In this case, Ms. Goren contends that her amended complaint[2] adequately alleges a cause of action under both subsection (c) and subsection (d) of § 1962. We shall therefore address the sufficiency of Ms. Goren's allegations under each subsection in turn.
 
 B.
 
 15
 1. Sufficiency of Allegations under § 1962(c)
 
 
 16
 In order to state a viable cause of action under § 1962(c), a plaintiff must allege " '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' " Vicom, 20 F.3d at 778 (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). In her amended complaint, Ms. Goren alleges, in four separate counts, that Dr. Wallach, the Boreykos, Direct and October "conducted or participated in the conduct" of the affairs of New Vision (the alleged enterprise) "through [a] pattern of racketeering activity." R.21 pp 94, 102, 110 & 118. It is not enough, however, for a plaintiff simply to allege the above elements in boilerplate fashion; instead, she must allege sufficient facts to support each element. In assessing whether Ms. Goren has pleaded sufficient facts to support her RICO allegations, we shall focus on two requirements of pleading a viable RICO claim under § 1962(c)--the "conduct" requirement and the "pattern of racketeering activity" requirement.
 
 
 17
 a. The "conduct" requirement
 
 
 18
 As we noted earlier, the district court dismissed Ms. Goren's RICO claims against Dr. Wallach, Direct and October because the amended complaint failed to allege sufficient facts to support its assertion that those defendants "conducted or participated in the conduct of the affairs of [the] enterprise's affairs through a pattern of racketeering." 18 U.S.C. § 1962(c). In Reves v. Ernst & Young, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), the Supreme Court set forth clearly the sort of facts a plaintiff must allege to support the "conduct" element of a RICO charge. The Court held that, in order to satisfy the "conduct" element of § 1962(c), a plaintiff must allege that the defendant "participated in the operation or management of the enterprise itself," and that the defendant played "some part in directing the enterprise's affairs." Id. at 179, 183, 113 S.Ct. 1163 (emphasis omitted). In short, mere participation in the activities of the enterprise is insufficient; the defendant must participate in the operation or management of the enterprise.
 
 
 19
 In this case, Ms. Goren failed to plead sufficient facts to meet the Reves "operation or management" test with respect to Dr. Wallach, Direct and October. Indeed, as the district court noted, the amended complaint does not contain any factual allegations that would lead to the conclusion that any of these defendants were involved in directing the affairs of New Vision, the alleged enterprise. The complaint does allege that each of these defendants performed certain services for the corporation: (1) Dr. Wallach licences the use of his name and the tape "Dead Doctors Don't Lie" to New Vision and Direct for the promotion of New Vision's mineral supplements, see R.21 p 16, and authored a letter endorsing New Vision and Direct, see id. p 27; (2) Direct produces and distributes promotional materials for New Vision's products, see id. p 25; and (3) Dynamics designates itself as a business partner to those who market New Vision's products, provides its toll-free number on Dr. Wallach's tape and takes orders for New Vision's products, see id. pp 24, 31 & 33. These averments clearly allege the existence of a business relationship between these defendants and the enterprise, but do not indicate that these defendants "took some part in directing [New Vision's] affairs." See Reves, 507 U.S. at 179, 113 S.Ct. 1163.[3] Indeed, simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself. See Emery v. American Gen. Fin., Inc. ("Emery II"), 134 F.3d 1321, 1325 (7th Cir.), cert. denied, --- U.S. ----, 119 S.Ct. 57, --- L.Ed.2d ---- (1998) (No. 97-1928).[4] Ms. Goren's amended complaint fails to satisfy this standard with respect to Dr. Wallach, Direct and October and therefore fails to state a claim against those defendants under § 1962(c).
 
 
 20
 b. The "pattern of racketeering activity" requirement
 
 
 21
 Even if Ms. Goren's amended complaint could be read to allege that Dr. Wallach, Direct and October took some part in directing New Vision's affairs, it still fails to allege a cause of action against either those defendants or the Boreykos because she fails to plead sufficient facts to show that any of the defendants engaged in a pattern of racketeering activity. A pattern of racketeering activity consists, at a minimum, of two predicate acts of racketeering committed within a ten-year time period. The predicate acts are violations of a specified list of criminal laws; in this case, Ms. Goren alleges predicate acts of mail and wire fraud. See 18 U.S.C. §§ 1341 & 1343. As we noted earlier, a plaintiff alleging predicate acts of mail and wire fraud must do so with particularity. See Fed.R.Civ.P. 9(b). In order to satisfy this standard, a RICO plaintiff must allege "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Vicom, 20 F.3d at 777 (internal quotations omitted). Moreover, because a RICO plaintiff must allege two predicate acts of fraud, she must satisfy the requirements of Rule 9(b) twice. See Emery II, 134 F.3d at 1323.
 
 
 22
 Ms. Goren's amended complaint fails to allege a "pattern of racketeering activity" with sufficient particularity to satisfy the requirements of Rule 9(b). In fact, Ms. Goren's attempt to allege a "pattern of racketeering activity" fails on several fronts. The first and most glaring deficiency in the amended complaint is its failure to allege two predicate acts. The amended complaint alleges only one fraudulent transaction--the sale of two bottles of "Essential Minerals" to Ms. Goren.[5] This is simply not enough to state a claim under § 1962(c). Indeed, we have repeatedly held that a plaintiff's conclusory allegations that "defendants" also defrauded unidentified "others" are not enough to plead the requisite pattern of fraud. In Emery v. American General Finance, Inc. ("Emery I"), 71 F.3d 1343 (7th Cir.1995), we encountered facts substantially similar to those in the case at hand:
 
 
 23
 The plaintiff pleaded with adequate particularity the fraud directed against her, but with regard to other customers of American General Finance alleged merely that the company did the same thing to them. There are no names or dates or other details of transactions involving any other customers besides Emery. These details ... are necessary to identify a violation of RICO, which requires ... more than one fraud and only one is alleged to have been perpetrated against Emery herself.
 
 
 24
 Id. at 1348; see also Jepson, Inc. v. Makita Corp., 34 F.3d 1321, 1328 (7th Cir.1994) (holding that plaintiff's allegation that defendant engaged in "multiple instances" of mail and wire fraud did not allege "pattern of racketeering activity" with sufficient particularity); Uni*Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 923 (7th Cir.1992) (holding that unspecified allegations that other companies were defrauded by use of the mails in the same manner as plaintiff did not satisfy particularity requirement of Rule 9(b)). Because the single sale to Ms. Goren is the only fraudulent transaction alleged in the amended complaint, that complaint fails to state a claim under § 1962(c).[6]
 
 
 25
 In addition to its glaring failure to allege a second predicate act, Ms. Goren's allegations of fraud against the Boreykos, Direct and October fall well short of the particularity required by Rule 9(b). First, with respect to the Boreykos, Ms. Goren's amended complaint alleges that the family controls New Vision and that each of the Boreykos is a part-owner of New Vision and is "familiar with and personally responsible for its policies and practices." R.21 PP 6-11. MS[7]. Goren alleges further that Benson K. Boreyko and Jason Boreyko gave interviews to Money and Success magazines and that they discussed the number of New Vision distributors and the use of the mail and telephones. See id. pp 20 & 49. Finally, the Boreykos are alleged to have "conducted or participated in the conduct of the affairs of the enterprise [New Vision]" through a pattern of racketeering activity. Id. p 102. Ms. Goren attributes no predicate acts to any of the Boreykos. Moreover, she fails to allege any facts sufficient to " 'notify the [Boreyko] defendants of their purported role in the scheme.' " Vicom, 20 F.3d at 778 (quoting Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1020 (7th Cir.1992)).
 
 
 26
 Ms. Goren's amended complaint suffers from similar infirmities with respect to Direct and October. Ms. Goren alleges that Direct and October knew that there was "no basis" for certain statements on Dr. Wallach's tape ("Dead Doctors Don't Lie"), R.21 p 32, that unspecified misrepresentations regarding New Vision products appear in "free literature published and/or distributed" by Direct, R.21 p 63, and that Direct and October "conducted or participated in the conduct of the affairs of the enterprise [New Vision]" through a pattern of racketeering activity. R.21 pp 110 & 118. These conclusory allegations fail to specify the time, place and content of any of the misrepresentations attributed to these defendants and therefore fall short of the particularity demanded by Rule 9(b). See Robin v. Arthur Young & Co., 915 F.2d 1120, 1127 (7th Cir.1990) (holding that "[p]laintiffs must provide more than conclusory allegations to satisfy rule 9(b)'s requirement that circumstances of fraud be pleaded with particularity"), cert. denied, 499 U.S. 923, 111 S.Ct. 1317 (1991). Moreover, with the exception of Dr. Wallach, who is alleged to have prepared the fraudulent tape, Ms. Goren's amended complaint provides insufficient "detail concerning who was involved in each allegedly fraudulent activity." Vicom, 20 F.3d at 778 (quoting Sears v. Likens, 912 F.2d 889, 893 (7th Cir.1990)) (internal quotations omitted). Instead, for the most part, the amended complaint simply treats all the defendants as one; such "lumping together" of defendants is clearly insufficient to state a RICO claim under § 1962(c). See Vicom, 20 F.3d at 778; see also Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.' ").
 
 
 27
 In sum, Ms. Goren's amended complaint fails to allege a viable cause of action under § 1962(c) for several reasons: (1) it fails to allege that Dr. Wallach, Direct and October participated in the operation and management of the New Vision enterprise; (2) it fails to allege a second predicate act of fraud; and (3) it fails to make its allegations of fraud against the Boreykos, Direct and October with sufficient particularity.
 
 
 28
 2. Sufficiency of Allegations under § 1962(d)[8]
 
 
 29
 The Supreme Court recently addressed the scope of RICO's conspiracy provision, 18 U.S.C. § 1962(d), in Salinas v. United States, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997). In Salinas, the Court analyzed a scheme in which a federal prisoner incarcerated in the Hidalgo County jail paid a series of bribes to Brigido Marmolejo, the Sheriff of Hidalgo County, Texas, in exchange for unsupervised conjugal visits with the prisoner's wife and girlfriend. Salinas was the chief deputy responsible for managing the jail and supervising the prisoners. Although he never personally accepted any bribes from the prisoner, Salinas agreed to arrange the prisoner's visits when Marmolejo was away from the jail and, on occasion, stood watch outside the room where the visits took place. Based on his role in the scheme, the government charged Salinas with violating both §§ 1962(c) and 1962(d). The jury acquitted Salinas of the substantive RICO violation, § 1962(c), but convicted him of the conspiracy charge under § 1962(d). On appeal, Salinas contended that the district court erred by allowing the jury to convict him on the conspiracy count despite the lack of evidence indicating that he had performed or agreed to perform personally two of the predicate acts which comprise the pattern of racketeering activity. See United States v. Marmolejo, 89 F.3d 1185, 1195 (5th Cir.1996). The Fifth Circuit affirmed Salinas' conviction, joining the eight other circuits, including this one, that had previously held such proof to be unnecessary. Three other circuits disagreed, however, and the Supreme Court granted certiorari to resolve the split in the circuits concerning the agreement requirement of § 1962(d).
 
 
 30
 The Court began its analysis by noting that the RICO conspiracy provision must be interpreted in light of the traditional understanding of the term "to conspire." See Salinas, 522 U.S. at ---- - ----, 118 S.Ct. at 476-77. Accordingly, the Court set forth the following well-established principles of conspiracy law: (1) an individual can be convicted of a conspiracy even if he "does not agree to commit or facilitate every part of the substantive offense"; (2) an individual who agrees with others to pursue a shared criminal objective may be held liable for the acts of the other conspirators; (3) such an individual may be held liable for the conspiracy even if he does not perpetrate the crime himself but provides support to those who do; and (4) an individual may be held liable for a conspiracy "even though he was incapable of committing the substantive offense." Id. Based on these general principles, the Court rejected Salinas' argument that the government was required to show that he agreed to commit personally two predicate acts of racketeering activity in order to convict him under § 1962(d). Instead, the Court held that "[a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." Id. In Salinas' case, therefore, the government met this burden by showing that Salinas "knew about and agreed to facilitate the scheme." Id. at 478.
 
 
 31
 Although this court has yet to address the issue of the scope of § 1962(d) in the post-Salinas era, our prior interpretations of that provision comport with the Supreme Court's broad reading of that statute in Salinas. Indeed, we have long recognized that "[s]ection 1962(d)'s target, like that of all provisions prohibiting conspiracies, is the agreement to violate RICO's substantive provisions, not the actual violations themselves." Schiffels v. Kemper Fin. Servs., Inc., 978 F.2d 344, 348 (7th Cir.1992). Accordingly, it is the well-established law of this circuit that an individual can be charged under § 1962(d) even if he does not agree to commit personally two predicate acts of racketeering. See United States v. Neapolitan, 791 F.2d 489, 498 (7th Cir.), cert. denied, 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986). Similarly, we have held that a defendant can be charged under § 1962(d) even if he cannot be characterized as an operator or manager of a RICO enterprise under Reves v. Ernst & Young, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). See MCM Partners, Inc. v. Andrews-Bartlett & Assocs., 62 F.3d 967, 979 (7th Cir.1995); United States v. Quintanilla, 2 F.3d 1469, 1484-85 (7th Cir.1993).
 
 
 32
 We have cautioned, however, that the broad construction of the RICO conspiracy provision should not be used by the courts "to criminalize mere association with an enterprise." Neapolitan, 791 F.2d at 498. We have stressed that the touchstone of liability under § 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute. See Gagan v. American Cablevision, Inc., 77 F.3d 951, 960 (7th Cir.1996); Schiffels, 978 F.2d at 348. Accordingly, in order to plead a viable § 1962(d) claim, a plaintiff must allege that a defendant "agreed to the objective of a violation of RICO." 791 F.2d at 498. In Neapolitan, we analyzed the precise nature of such an agreement:
 
 
 33
 From a conceptual standpoint a conspiracy to violate RICO can be analyzed as composed of two agreements ...: an agreement to conduct or participate in the affairs of an enterprise and an agreement to the commission of at least two predicate acts. Thus, a defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise, and neither is the defendant who agrees to the commission of two criminal acts but does not consent to the involvement of an enterprise. If either aspect of the agreement is lacking then there is insufficient evidence that the defendant embraced the objective of the alleged conspiracy. Thus, mere association with the enterprise would not constitute an actionable 1962(d) violation. In a RICO conspiracy, as in all conspiracies, agreement is essential.
 
 
 34
 Id. at 499. Thus, in order to state a viable claim under § 1962(d), Ms. Goren must allege (1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity[9] and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals. Gagan, 77 F.3d at 961; MCM Partners, 62 F.3d at 980.
 
 
 35
 Ms. Goren's amended complaint fails to allege that each defendant entered into an agreement to violate RICO. First, with respect to the Borekyos, the complaint alleges that each of the Boreykos is a part-owner and is familiar with and personally responsible for the policies of New Vision. Beyond this blanket statement, the complaint provides no details as to the roles played by the individual Boreykos in the New Vision corporation, not even their corporate titles; nor does it allege any facts indicating an agreement by the individual Boreykos as to which roles they would play in the enterprise. In sum, the amended complaint fails to allege an agreement by any of the Boreykos to participate in the affairs of the RICO enterprise. Moreover, the complaint also fails to allege an agreement by the Boreykos to the commission of two specific predicate acts. Of course, Ms. Goren need not allege an agreement by each of the defendants to commit personally two predicate acts of racketeering activity. She must, however, allege an agreement by each defendant to the commission (by someone) of two specific predicate acts on behalf of the enterprise.
 
 
 36
 As noted earlier, with respect to Dr. Wallach, the amended complaint alleges that he prepared a fraudulent tape and that he licensed the use of that tape and his name to New Vision for the promotion of its mineral supplements. This averment fails to allege the type of agreement described in Neapolitan. Instead of alleging an agreement by Dr. Wallach to participate in the affairs of the RICO enterprise, this allegation indicates an agreement by Dr. Wallach to a single transaction with the alleged enterprise. Accordingly, Ms. Goren fails to allege a viable § 1962(d) claim against Dr. Wallach.
 
 
 37
 Ms. Goren also fails to allege a viable RICO conspiracy claim against Direct and October. Although these defendants are alleged to have performed certain services for New Vision and to have known that certain statements on the Wallach tape had "no basis," the complaint is utterly devoid of allegations indicating either a specific agreement by these defendants to participate in the affairs of the enterprise or an agreement to the commission of two specific predicate acts.
 
 
 38
 Finally, Ms. Goren's amended complaint cannot be saved by its many conclusory and vague allegations concerning the collective conduct of the "defendants." It is well established that a complaint may be dismissed if it contains only conclusory, vague and general allegations of a conspiracy. See Schiffels, 978 F.2d at 352; Otto v. Variable Annuity Life Ins. Co., 814 F.2d 1127, 1136 (7th Cir.1986), cert. denied, 486 U.S. 1026, 108 S.Ct. 2004, 100 L.Ed.2d 235 (1988); see also Rose v. Bartle, 871 F.2d 331, 366 (3d Cir.1989) (holding that a conspiracy claim must contain supportive factual allegations describing the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in the conspiracy).[10] Instead, in order to state a viable RICO conspiracy claim against a particular defendant, a RICO plaintiff must allege that that defendant entered into the type of agreement described in Neapolitan. As our discussion above indicates, Ms. Goren fails to allege that any of the defendants entered into such an agreement.
 
 Conclusion
 
 39
 Because we have concluded that Ms. Goren's amended complaint fails to state a viable cause of action under either 18 U.S.C. § 1962(c) or 18 U.S.C. § 1962(d), we affirm the district court's judgment of dismissal.
 
 
 40
 AFFIRMED.
 
 
 
 [1]
 Because this case comes to us on appeal from the dismissal of the complaint, we take the facts as alleged in the complaint as true for purposes of our review. See, e.g., Kauthar SDN BHD v. Sternberg, 149 F.3d 659 (7th Cir. 1998)
 
 
 [2]
 We note at the outset that the operative complaint in this case is Ms. Goren's (first) amended complaint. In her opening brief to this court, Ms. Goren bases her statement of facts on her second amended complaint. That complaint, however, is not before this court. On September 3, 1997, the district court entered a judgment dismissing Ms. Goren's complaint. Ms. Goren subsequently filed a motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend judgment to permit filing of a second amended complaint. Ms. Goren attached her proposed second amended complaint to that motion. On October 23, 1998, the court entered an order denying Ms. Goren's motion. In her opening brief, Ms. Goren devoted nearly her entire argument to the district court's decision dismissing her amended complaint. Indeed, there is no "Issue Presented" or meaningful argument regarding the district court's denial of Ms. Goren's Rule 59(e) motion; instead, the brief contains only one sentence addressing that issue. In that sentence, Ms. Goren simply contends that the "novel and unexpected nature of [the district court's holding] made it an abuse of discretion to deny leave to file the second amended complaint containing allegations explicitly contradicting such a seemingly inappropriate finding." Appellant's Br. at 22. Ms. Goren did not develop this perfunctory argument any further; nor did she bother to support it with pertinent authority. We therefore deem this argument waived pursuant to Federal Rule of Appellate Procedure 28(a)(3) & (a)(6). See Thomas & Betts Corp. v. Panduit Corp., 138 F.3d 277, 301 (7th Cir.), cert. denied, --- U.S. ----, 119 S.Ct. 336, --- L.Ed.2d ---- (1998) (No. 98-179); see also United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir.1991) (stating that "[w]e repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"), cert. denied, 502 U.S. 845, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991)
 
 
 [3]
 The facts alleged in Ms. Goren's complaint are different from those we evaluated in MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc., 62 F.3d 967, 977-79 (7th Cir.1995). In that case, the plaintiff alleged an "association-in-fact" enterprise consisting of several defendants and pursued RICO claims against "lower rung" members of the enterprise despite the fact that they had merely implemented the decisions of other members of the enterprise. The district court dismissed the claims against those defendants because, in its view, they did not play any role in the direction of the enterprise. We reversed and held that the defendants could be held liable because they had knowingly implemented the decisions of upper management and thereby participated in the direction of the enterprise. In reaching that decision, we stressed that "[t]he primary fact leading us to this conclusion is the nature of the 'enterprise' [plaintiff] has depicted, as both [defendants] are alleged to be members of an 'association-in-fact' enterprise constituting the RICO enterprise." Id. at 979. In this case, by contrast, the enterprise alleged is New Vision, not an association-in-fact. Dr. Wallach, Direct and October are not alleged to be part of the enterprise and therefore cannot be said to conduct the affairs of the enterprise by implementing the decisions of upper management. Instead, these defendants are best characterized as contractors hired by the enterprise to perform specific tasks
 
 
 [4]
 Cf. Baumer v. Pachl, 8 F.3d 1341, 1344-45 (9th Cir.1993) (holding that attorney who simply provided legal services to corporation did not participate in operation or management of enterprise regardless of whether he performed those services "well or poorly, properly or improperly"); Stone v. Kirk, 8 F.3d 1079, 1092 (6th Cir.1993) (holding that defendant "who was associated with the enterprise" and "engaged in a pattern of racketeering activity when he repeatedly violated the anti-fraud provisions of the securities laws" was not liable under § 1962(c) because he "had no part in directing" the enterprise's affairs); University of Md. at Baltimore v. Peat, Marwick, Main & Co., 996 F.2d 1534, 1539 (3d Cir.1993) (stating that "[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO"); Nolte v. Pearson, 994 F.2d 1311, 1317 (8th Cir.1993) (holding that attorneys who prepared allegedly false opinion letters and informational memoranda regarding a music recording leasing program had not participated in operation or management of enterprise); Redtail Leasing, Inc. v. Bellezza, No. 95 Civ. 5191(JFK), 1997 WL 603496, at * 5 (S.D.N.Y. 1997) (stating that "[a] defendant does not 'direct' an enterprise's affairs under § 1962(c) merely by engaging in wrongful conduct that assists the enterprise"); Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L., 832 F.Supp. 585, 590-91 (E.D.N.Y.1993) (holding that attorney who knowingly assisted enterprise in execution of fraudulent scheme by providing legal services and advice could not be held liable under § 1962(c) because his role was, at all times, limited to the provision of legal services and did not extend to operation or management of enterprise); Gilmore v. Berg, 820 F.Supp. 179, 183 (D.N.J.1993) (holding that attorney who allegedly prepared false private placement memoranda regarding limited partnership did not conduct affairs of enterprise because he did not "direct[ ] the legal entities he represented to engage in particular transactions")
 
 
 [5]
 At oral argument, Ms. Goren's counsel contended that the complaint did in fact identify another "victim" and directed the court's attention to Exhibit E of Ms. Goren's amended complaint. Exhibit E to the amended complaint is an article from Money magazine entitled "How to Build a Business to Make More Money." The article tells the story of the Almeida family of Elgin, Illinois. Specifically, the article details the Almeidas' effort to go into business as a New Vision distributorship. There is no allegation of fraud anywhere in the article; in fact, Money reports that the Almeida family "is genuinely enthusiastic about the benefits of [New Vision's] vitamins and minerals." The article further reports that "New Vision appears to be a reputable company." Although Money ultimately concludes that a New Vision distributorship is not the best solution to the Almeidas' financial struggles, this article cannot serve as a substitute for an allegation of a second predicate act
 
 
 [6]
 The allegations we encountered in this case are different from those analyzed by this court in Corley v. Rosewood Care Center, Inc., 142 F.3d 1041 (7th Cir.1998). In that case, the plaintiff's complaint failed to allege the predicate acts of fraud with the particularity demanded by Rule 9(b). However, that plaintiff specifically alleged that the specific information he needed to meet Rule 9(b)'s heightened pleading standard was "in the hands of the defendant, who at the time had resisted his attempts in discovery to obtain a list of other Rosewood residents affected by the alleged scheme." Id. at 1051. In this case, by contrast, Ms. Goren's amended complaint contains no such allegation. Moreover, given Ms. Goren's contentions that the entire New Vision enterprise is a sham and that it has defrauded thousands of individuals, we find it difficult to believe that plaintiff's counsel, a law firm experienced in the filing of RICO class actions, could not have found additional "victims" prior to the filing of the amended complaint
 
 
 [7]
 Ben, Karen and Lynne Boreyko are mentioned individually only in paragraphs 8-10 of the amended complaint
 
 
 [8]
 Defendants assert that we should not reach the issue of whether Ms. Goren's amended complaint states a viable RICO conspiracy claim under § 1962(d) because the complaint makes no reference to that subsection. Instead, the defendants assert, the amended complaint makes reference only to § 1962(c) and clearly attempts to track the language of that subsection. This, however, is no obstacle to our consideration of whether Ms. Goren's complaint states a claim under § 1962(d). Under the notice pleading regime of the Federal Rules of Civil Procedure, plaintiffs are not required to plead legal theories. See Bartholet v. Reishauser A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir.1992). "Instead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations." Id
 
 
 [9]
 Of course, a plaintiff is not required to allege that the defendant agreed to participate in the operation or management of the conspiracy; rather, it is sufficient for a plaintiff to allege that the defendant agreed to participate in the affairs of the enterprise
 
 
 [10]
 This court has yet to decide the extent to which Rule 9(b)'s particularity requirement applies to allegations under RICO's conspiracy provision. Because our decision in this case is based on Ms. Goren's failure to allege that each defendant entered into the type of agreement described in Neapolitan, we need not reach that issue today. Compare Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n. 4 (2d Cir.1990) (stating that, "[o]n its face, Rule 9(b) applies to fraud or mistake, not to conspiracy"), and Rose, 871 F.2d at 366 (stating that allegations of fraud are not measured under the Rule 9(b) standard), with Brooks v. Bank of Boulder, 891 F.Supp. 1469, 1479 (D.Colo.1995) (applying Rule 9(b) particularity requirement to complaint alleging RICO conspiracy), and Frymire v. Peat, Marwick, Mitchell & Co., 657 F.Supp. 889, 896 (N.D.Ill.1987) (stating that any plaintiff alleging a conspiracy must identify the nature of the conspiracy and the defendant's role in it with some particularity and must also "allege with some particularity facts sufficient to show an agreement between the parties to inflict the alleged wrong")