In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-1475

MUSKEGAN HOTELS, LLC, *et al.*,

*Plaintiffs-Appellants*,

*v.*

HIREN PATEL, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:14-cv-9186 — **John J. Tharp, Jr.**, *Judge*.

ARGUED DECEMBER 11, 2020 — DECIDED JANUARY 20, 2021

Before ROVNER, HAMILTON, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Hasan Merchant made ill-fated investments in three hotel properties in Michigan from late 2005 to 2007 and lost all three to foreclosure in 2009. Believing that the seller had fraudulently inflated the appraised values and ultimate sale prices of the properties, Merchant sued a host of individuals and entities allegedly involved in the transactions. After years and numerous rounds of amended pleadings, the district court dismissed with prejudice all claims

against two law firms that provided legal services for the seller and lender at various points in time. We agree that the operative complaint—here, the Fifth Amended Cross-Complaint—fails to state any claims against either law firm, so we affirm.

**I**

**A**

On a motion to dismiss, we take the facts stated in the operative complaint as true and view them in the light most favorable to the non-moving parties—the cross-plaintiffs. See *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 332 (7th Cir. 2019).

Over the course of late 2005 to 2007, Hasan Merchant agreed to purchase three hotel properties in Michigan from the National Republic Bank of Chicago (NRB). Merchant financed the purchases through NRB and used two corporate entities as the buyers—Muskegan Hotels, LLC for two hotels in Muskegon and M.D. 1 LLC for one hotel in Benton Harbor. Merchant sold interests in these ventures to other investors.

Over time the investment values of the properties declined, and it became clear that the hotels had been appraised at inflated amounts and sold for about twice their fair values. When Muskegan Hotels, LLC and M.D. 1 LLC defaulted on their loan payments, NRB foreclosed on all three properties in 2009. Merchant believes this investment failure was the fruit of appraisal fraud, contending that NRB's executives, Hiren Patel and Edward Fitzgerald, colluded with an appraiser, William Daddono, to sell overvalued real estate to unsuspecting purchasers, wait for default, foreclose on the property, and then repeat the process with new, unwitting investors.

Litigation ensued in 2010. It was then that Nabil Saleh, an investor in Muskegan Hotels, sued Merchant, Merchant's property companies, NRB, and 12 others for investor fraud in the Circuit Court of Cook County, Illinois. The case made its way to federal court in 2014 when the Federal Deposit Insurance Corporation took NRB into receivership, substituted for NRB as a defendant, and removed the case pursuant to 12 U.S.C. § 1819(b)(2)(B).

Saleh's lawsuit prompted Merchant, along with four of his property companies, to bring a cross-complaint in March 2015 against the FDIC as receiver for NRB, alleging violations of the Racketeer Influenced and Corrupt Organizations Act and related state law claims. The district court permitted two rounds of amendments to the cross-complaint to add parties and claims. The court dismissed nearly all claims in the Second Amended Cross-Complaint, permitted a Third Amended Cross-Complaint, refused the request to file a Fourth Amended Cross-Complaint adding 37 new cross-defendants, and one last time permitted a Fifth Amended Cross-Complaint adding new claims but no new parties.

This Fifth Amended Cross-Complaint—the last of many iterations of pleadings—raises 14 counts against ten defendants, including two law firms that provided legal work to NRB at different times. Wolin & Rosen, Ltd. performed legal services for NRB until 2012. Those services included preparing documents for NRB's property transactions with Merchant, Muskegan Hotels, LLC, and M.D. 1 LLC. In 2012, SmithAmundsen LLC began providing legal services in connection with NRB's real estate transactions.

The district court dismissed several counts in the Fifth Amended Cross-Complaint against various cross-defendants,

but others remain active. Indeed, aspects of the litigation—in both the underlying lawsuit and this cross-complaint—are still pending in the district court. Before us in this appeal is one narrow portion of this sprawling litigation—the dismissal of all claims against Wolin & Rosen and SmithAmundsen.

B

The Fifth Amended Cross-Complaint advanced three civil RICO counts and several related theories of recovery under state law, lumping the law firms together with all other cross-defendants. The district court dismissed all claims against the two firms with prejudice as part of a broader ruling on the cross-defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Beginning with the state law claims, the district court reasoned that Illinois's statute of repose for actions arising out of legal work barred the state law claims against Wolin & Rosen as untimely. In so holding, the district court added that the cross-complaint's bare allegation of fraudulent concealment was inadequate to toll the time for filing suit.

As for the claims against SmithAmundsen, the district court identified a fatal pleading deficiency. The cross-complaint, in the court's view, lacked any well-pleaded allegations connecting SmithAmundsen's conduct either to Hasan Merchant's purchase of hotels or to Patel and Fitzgerald's alleged fraud scheme. The court therefore dismissed all state law claims (in all counts) against SmithAmundsen.

What remained against both Wolin & Rosen and SmithAmundsen were three civil RICO counts: two alleged violations of 18 U.S.C. § 1962(c) for financial institution fraud and collection of unlawful debt, and one alleged violation of

18 U.S.C. § 1962(a) for investing the proceeds of such fraud. As to the former two counts, the district court read the cross-complaint as failing to allege that Wolin & Rosen was anything more than a paid services provider for NRB, or that SmithAmundsen performed anything other than routine legal work for NRB. The cross-complaint, the court concluded, failed to allege that either law firm conducted or participated in the activities of a RICO enterprise and therefore neither firm could be liable under § 1962(c).

The latter claim—the alleged violation of § 1962(a) based on the investment of proceeds from either a pattern of racketeering or collection of unlawful debt—likewise failed on the pleadings. For one, the court concluded the cross-complaint lacked allegations about any collection of unlawful debt. As for a pattern of racketeering, the only predicate acts of racketeering pleaded with sufficient particularity, the court determined, were Patel and Fitzgerald's mailings of false appraisals to Merchant, Muskegan Hotels, LLC, and M.D. 1 LLC. But those acts alone, the district court reasoned, were too few in number, too short in duration, and too narrow in scope to constitute a pattern of racketeering activity. This same pleading failure, the court continued, doomed any claim of a RICO conspiracy under § 1962(d) because demonstrating a conspiracy required showing an agreement to participate in an enterprise through a pattern of racketeering activity, and no such pattern was pleaded here.

After the court dismissed all claims against the law firms, Merchant and the other cross-plaintiffs filed a motion for reconsideration pursuant to Rule 54(b), which the court denied. The court's earlier order on the Rule 12(b)(6) motions dismissed some, but not all, cross-defendants, so the court

exercised the discretion conferred by Rule 54(b) and entered final judgment in favor of both law firms. See Fed. R. Civ. P. 54(b) (authorizing a court to direct entry of a final judgment as to one or more, but fewer than all, claims or parties if the court determines there is no just reason for delay).

The cross-plaintiffs now appeal and, as a result of the separate Rule 54(b) judgment, we have jurisdiction under 28 U.S.C. § 1291 to review the dismissal of claims against the law firms notwithstanding that some cross-claims against other cross-defendants remain pending in the district court. See *Peerless Network, Inc. v. MCI Commc'ns Servs., Inc.*, 917 F.3d 538, 543 (7th Cir. 2019) (citing *VDF FutureCeuticals, Inc. v. Stiefel Labs., Inc.*, 792 F.3d 842, 845 (7th Cir. 2015)) ("A final judgment entered under Rule 54(b) is immediately appealable though the rest of the case remains pending in the district court.").

## II

### A

Having taken our own fresh look at the allegations in the Fifth Amended Cross-Complaint, we find that the district court was right to conclude that all claims against Wolin & Rosen and SmithAmundsen fail on the pleadings.

We begin with the ten counts under state law against Wolin & Rosen, all of which are untimely under Illinois's statute of repose. Illinois law provides that any action against a law firm arising out of the performance of professional services may not commence more than six years after the act or omission at issue. See 735 ILCS 5/13-214.3(b)–(c). The last of Wolin & Rosen's legal work on the property transactions featured in the Fifth Amended Cross-Complaint took place in

June 2007, when a partner at the firm prepared a loan modification agreement with allegedly inflated principal amounts for the two hotels in Muskegon and sent it to NRB. That legal assistance extended at the very latest to the final closing on the Muskegon hotels in July 2007. Yet the cross-plaintiffs waited more than eight years—until the First Amended Cross-Complaint in November 2015—to file any claims against Wolin & Rosen.

The arguments the cross-plaintiffs make to avoid the statute of repose miss the mark. The cross-complaint contains no allegations that any cross-defendant fraudulently concealed the existence of a cause of action against the law firms. See *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) ("[I]f the facts pleaded in the complaint establish that a claim is time barred, as they do here, a bare allegation of fraudulent concealment, without more, will not save the claim."); see also *DeLuna v. Burciaga*, 857 N.E.2d 229, 240–43 (Ill. 2006) (recognizing that fraudulent concealment can, pursuant to 735 ILCS 5/13-215, toll Illinois's statute of repose when a defendant conceals the existence of a cause of action from the plaintiff's knowledge); *Gredell v. Wyeth Labs., Inc.*, 803 N.E.2d 541, 548 (Ill. App. Ct. 2004) (describing requirements for proving fraudulent concealment).

Nor does any aspect of the Bankruptcy Code toll the statute of repose for Merchant's claims. The assertion that Merchant filed a bankruptcy petition in 2004 is irrelevant to any state claims that he might have affirmatively brought against Wolin & Rosen. What is more, the cross-plaintiffs waived this argument by raising it for the first time in a motion to reconsider in the district court. See *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009).

We have no trouble concluding that all state law claims against Wolin & Rosen are untimely.

## B

The state law claims against SmithAmundsen fare no better. Indeed, on appeal, the cross-plaintiffs altogether fail to address the claims against SmithAmundsen and have therefore forfeited any argument for reversal. See *Hackett v. City of South Bend*, 956 F.3d 504, 510 (7th Cir. 2020). Even if they had pursued these claims, the cross-complaint acknowledges that SmithAmundsen first entered the scene in 2012 when it began performing legal work for NRB. Put another way, the cross-complaint effectively admits that SmithAmundsen played no role in NRB's alleged fraud perpetrated against Hasan Merchant from 2005 to 2007. So the district court was correct to dismiss all state law counts against SmithAmundsen.

## III

### A

We turn next to the cross-plaintiffs' three civil RICO claims. As these claims arise under federal law, Illinois's statute of repose does not apply, but the cross-plaintiffs nevertheless failed to state a RICO claim against either law firm.

In addition to imposing criminal liability, the RICO statute creates a civil cause of action with treble damages for individuals injured by those who engage in racketeering activity prohibited by 18 U.S.C. § 1962. See 18 U.S.C. § 1964(c). Where, as here, the alleged predicate acts of racketeering involve fraud, the complaint must describe the "who, what, when, where, and how" of the fraudulent activity to meet the heightened pleading standard demanded by Rule 9(b). *Menzies*, 943 F.3d at 338; see *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 587

n.56 (7th Cir. 2017). The Fifth Amended Cross-Complaint grounds the RICO claims in two different provisions of the statute: § 1962(c), which prohibits conducting an enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt, and § 1962(a), which prohibits the investment of proceeds from such racketeering activity. See 18 U.S.C. § 1962(a), (c).

To state a claim under § 1962(c), the complaint must allege that the law firms engaged in the (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity or collection of unlawful debt. See *Salinas v. United States*, 522 U.S. 52, 62 (1997). The first element demands proof that a defendant "conduct[ed] or participate[d] … in the conduct of [the] enterprise's affairs." 18 U.S.C. § 1962(c). In *Reves v. Ernst & Young*, the Supreme Court explained that this element requires showing that a defendant "participate[d] in the operation or management of the enterprise itself." 507 U.S. 170, 185 (1993).

This operation-or-management requirement does not necessarily limit the scope of liability to an enterprise's upper management. Lower-rung participants and even third-party outsiders can be liable, provided they play a part in operating or managing the enterprise. See *id.* at 184–85; see also *United States v. Shamah*, 624 F.3d 449, 455 (7th Cir. 2010) (concluding that a street police officer was a lower-rung "operator" of the charged RICO enterprise); *MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*, 62 F.3d 967, 979 (7th Cir. 1995) (determining that the complaint sufficiently pleaded that two contractors were lower-rung participants in a RICO enterprise).

But the law is equally clear that the operation-or-management requirement is not met through the mere provision of professional services to the alleged racketeering enterprise.

See *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009); see also *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998) ("Indeed, simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c) …."). A complaint that does no more than allege that a law firm performed legal work for an enterprise fails to state a violation of § 1962(c). See *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 598 (7th Cir. 2001) (concluding and explaining generally that a complaint advancing a claim under § 1962(c) is legally deficient where it lacks allegations that the defendant managed or exerted any control over the enterprise itself).

This principle likewise applies to a claim alleging a RICO conspiracy in violation of § 1962(d). Allegations that a law firm provided legal representation to an enterprise do not, without more, suffice to state a RICO conspiracy. See *Domanus v. Locke Lord LLP*, 847 F.3d 469, 481–82 (7th Cir. 2017) (describing elements of a RICO conspiracy claim and a law firm's potential liability). The complaint needs to go further and allege that the firm, with knowledge of a conspiracy to violate the RICO statute, agreed to conduct or participate in the affairs of an enterprise through a pattern of racketeering and agreed to the commission of two predicate acts of racketeering. See *id.* at 479, 481–82 (discussing in detail the requisite elements of a RICO conspiracy claim); see also *DeGuelle v. Camilli*, 664 F.3d 192, 204 (7th Cir. 2011).

Recall that the cross-plaintiffs also allege a violation of § 1962(a). That provision requires proof that a defendant received income from a pattern of racketeering activity, used or invested that income in the operation of an enterprise, and

caused the injury complained of through the use or investment of racketeering income. See *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 398 (7th Cir. 2009). When the pattern of racketeering activity element is supported by allegations of fraud, those facts must be pleaded with the particularity required by Rule 9(b). See *Lachmund v. ADM Inv. Servs., Inc.*, 191 F.3d 777, 784–85 (7th Cir. 1999).

B

The Fifth Amended Cross-Complaint alleges that NRB itself was a racketeering enterprise and spends over 170 paragraphs detailing alleged RICO violations. But none comes close to adequately pleading that Wolin & Rosen played a part in operating or managing NRB, conspired to commit a RICO violation, or invested income from a pattern of racketeering.

Read holistically and examined for necessary particularity, the cross-complaint reveals that Hiren Patel and Edward Fitzgerald, as CEO and President of NRB, ran the bank's operations and managed its real estate dealings. As for Wolin & Rosen's involvement, the cross-complaint at most describes that the firm's attorneys prepared promissory notes, closing documents, and loan modification agreements for the three Michigan hotel transactions, and then provided this work product to its client, NRB. Our cases make clear that a law firm's provision of legal services for a client—even with knowledge of the client's unlawful activities—does not alone demonstrate operation or management of a racketeering enterprise. See *Crichton*, 576 F.3d at 399 ("The [RICO] statute does not penalize tangential involvement in an enterprise," and "[a]llegations that a defendant had a business relationship with the putative RICO enterprise or that a defendant

performed services for that enterprise do not suffice."); *Goren*, 156 F.3d at 728 n.4 (collecting cases reinforcing the same point).

Absent particular allegations that Wolin & Rosen participated in the operation or management of NRB itself, the firm cannot be held liable under § 1962(c). See *Reves*, 507 U.S. at 185. Conclusory allegations to the contrary—that Wolin & Rosen participated in the enterprise, schemed to induce cross-plaintiffs to buy overvalued property, or contributed in some way to the conception of the fraud scheme—will not do. It is these shortcomings that defeat the § 1962(c) claims against Wolin & Rosen.

The claim that Wolin & Rosen conspired to commit a RICO offense fails for much the same reason. The Fifth Amended Cross-Complaint states in a conclusory manner that Wolin & Rosen knew that NRB was engaged in a fraudulent appraisal and loan scheme and agreed to participate in this conspiracy. But the cross-complaint provides no details about the content of any agreement, when and where any agreement arose, or what acts of racketeering were agreed upon. Adequately pleading a RICO conspiracy also demands allegations that a defendant agreed to participate in the affairs of an enterprise—here, NRB—and no non-conclusory allegations establish such an agreement by Wolin & Rosen. See *Domanus*, 847 F.3d at 481.

The cross-complaint further fails to plead that Wolin & Rosen received and invested proceeds from a pattern of racketeering activity. It alleges that Wolin & Rosen received a $2,000 fee payment per real estate transaction on the Michigan properties, but there is no assertion the law firm did anything

to reinvest that income in NRB as the alleged racketeering enterprise.

In the end, the Fifth Amended Cross-Complaint does little more than allege that Wolin & Rosen provided legal services to its client, NRB, with the bank then using that legal work to close three real estate transactions with Hasan Merchant. Even if Wolin & Rosen knew or should have known that the appraisals for these properties were inflated, alleging mere knowledge is insufficient to state a claim against Wolin & Rosen under the RICO statute. See *Goren*, 156 F.3d at 728.

These conclusions are doubly true for SmithAmundsen. There is no allegation anywhere in the Fifth Amended Cross-Complaint connecting any work SmithAmundsen performed for NRB—all of which occurred in or after 2012—to any alleged racketeering, conspiracy, or investment of proceeds from racketeering from 2005 to 2007.

## IV

Within the morass of the cross-plaintiffs' appeal lie challenges to other decisions of the district court over which we have no appellate jurisdiction or that have nothing to do with the claims on appeal. The district court's partial final judgment under Rule 54(b), for example, did not include the dismissal of claims against Hiren Patel and Edward Fitzgerald, so we cannot review the non-final dismissal of those claims. As another example, the opening brief on appeal contests the district court's refusal to allow discovery from the U.S. Treasury Department, a matter having nothing to do with the sufficiency of the pleadings against Wolin & Rosen and SmithAmundsen. Having reviewed all remaining arguments, we are confident that none has merit.

Trying to make sense of the cross-plaintiffs' contentions has presented quite a challenge on appeal, and our review benefitted significantly from the adept care and diligence taken by Judge Tharp in the district court. We close by noting that several claims remain pending before the district court and others were dismissed in non-final orders not subject to appellate review at this time. We express no opinion on the viability of claims or bases for dismissal not properly before us on appeal.

As to the final dismissal of claims against Wolin & Rosen and SmithAmundsen, we AFFIRM.